EXHIBIT "A"

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| KIMBERLY JESSE VOLPE aka KIMBERLY LACKEY, | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 4:21-cv-00484-P |
| v. | § § | |
| CENLAR FSB and CITIMORTGAGE, INC., | § § | |
| Defendants. | § § | |

## FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Kimberly Jesse Volpe aka Kimberly Lackey ("Plaintiff"), by and through counsel, for her First Amended Complaint against Defendants Cenlar FSB ("Cenlar") and CitiMortgage, Inc. ("CitiMortgage") (Cenlar and CitiMortgage are collectively referred to as "Defendants"), states as follows:

## I. INTRODUCTION

1.      Defendants engaged in willful, malicious, deceptive and harassing actions against Plaintiff in furtherance of their efforts to illegally collect debt from Plaintiff when Defendants were legally forbidden against making any contact with her or taking any collection actions against her, after her surrender of the collateral real property during the pendency of Plaintiff's Chapter 13 bankruptcy case, and after the debt was discharged as to her personal liability.  Defendants' actions at issue include: 1) Cenlar misreporting the discharged debt to the credit bureaus as an open and active account with a live debt due and owing; and 2) CitiMortgage impermissibly obtaining and using her confidential, personal and financial information in her protected credit file and consumer

report with Equifax.  Defendants' actions were taken in accordance with their policies, procedures, practices and malicious design to illegally profit by taking advantage of unsophisticated consumers.

2.       Specifically, Plaintiff claims Defendants violated: 1) Tex. Fin. Code § 392.001 *et seq.,* known as the Texas Debt Collection Act ("TDCA"); 2) the common law prohibiting invasion of privacy; 3) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681, *et seq*., known as the Fair Credit Reporting Act ("FCRA") (against CitiMortgage only); and 4) the Federal Fair Debt Collection Practices Act (the "FDCPA") (against Cenlar only).  Plaintiff also brings a defamation action and seeks to recover from Defendants actual, statutory, and punitive damages, and legal fees and expenses.

## II. PARTIES

3.       Plaintiff is a natural person residing in Tarrant County, Texas and a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and the TDCA, Tex. Fin. Code § 392.001(1), and the FDCPA, 15 U.S.C. § 1692a(3).

4.       Defendant Cenlar is a federal savings bank which has made an appearance in this case.

5.       Defendant CitiMortgage is a foreign limited liability company which has made an appearance in this case.

6.       Defendants are both a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b) and a "creditor," "debt collector," and/or "third-party debt collector" as defined by the TDCA, Tex. Fin. Code §§ 392.001(3), (6) and (7).  Defendant Cenlar is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a.

7.     The debt Defendants were attempting to collect from Plaintiff was a "consumer debt," as defined by the TDCA, Tex. Fin. Code § 392.001(2) and the FDCPA, 15 U.S.C. § 1692a.

8.     Defendants are "user(s)" of consumer credit and other financial information under the FCRA and a furnisher of consumer credit information to national consumer reporting agencies Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and/or Experian Information Solutions, LLC ("Experian") (collectively the "CRAs").

### III. JURISDICTION AND VENUE

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334 and 1367, 15 U.S.C. §§ 1681p and 1692.

10.     Venue is proper this district, because Defendants transact business in this district, Plaintiff filed her bankruptcy case in this district, and the conduct complained of occurred in this district.

### IV. FACTUAL ALLEGATIONS

**A.     The Subject Debt was Included in Plaintiff's Bankruptcy Case and Discharged as to her Personal Liability.**

11.     On November 2, 2017, Plaintiff filed Chapter 13 bankruptcy in case number 17-44426-mxm13 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Bankruptcy Court").

12.     On "Schedule D: Creditors Who Have Claims Secured by Property" ("Schedule D") filed with her bankruptcy petition, Plaintiff listed a claim for an account ending in 9980 (the "Account"), identifying CitiMortgage as the creditor for the debt, related to a mortgage secured by real property at 907 Tulane Dr., Arlington, Texas 76012 (the "Property"), which Plaintiff had sold subject to CitiMortgage's lien and permanently vacated prior to filing her Bankruptcy Case.

13.     A true and correct copy of Plaintiff's Schedule D is attached hereto as Exhibit "A."

14. When Plaintiff filed bankruptcy, she was in default under the mortgage note. CitiMortgage was the sole mortgage servicer when the Account went into default at the time of Plaintiff's bankruptcy filing. CitiMortgage did not foreclose on the subsequent purchaser at any time before Plaintiff's bankruptcy, during Plaintiff's bankruptcy, or after Plaintiff's bankruptcy was discharged.

   **1)   CitiMortgage Received Notice of Plaintiff's Bankruptcy Case and the Imposition of the Automatic Stay Prohibiting all Collections Against Plaintiff, Made an Appearance and Filed a Proof of Claim.**

15. On or about November 5, 2017, the Bankruptcy Noticing Center for the Bankruptcy Court sent CitiMortgage, by first class mail, a copy of the "Notice of Chapter 13 Bankruptcy Case" (known as a "341 Notice"). The 341 Notice informed all creditors about Plaintiff's Bankruptcy Case and the automatic stay imposed by 11 U.S.C. § 362, noting that "[t]he filing of the case imposed an automatic stay against most collection activities." Also, the 341 Notice stated, in part, "Creditors cannot demand repayment from debtors by mail, phone, or otherwise." Further, it informed all creditors that they cannot try to collect from the debtors by taking any collection actions against them or their property, noting that "Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees."

16. A true and correct redacted copy of the 341 Notice is attached hereto as Exhibit "B."

17. The United States Postal Service did not return the 341 Notice sent to CitiMortgage, creating a presumption it was received.

18. On December 11, 2017, CitiMortgage, as the mortgage servicer, filed Claim No: 5, a fully secured claim in the amount of $146,842. CitiMortgage asserted that "On or about October 6, 2011, Kimberly Jesse Volpe and Eduardo Hinojoso executed a Note payable to ACOPIA, LLC,

-4-

in the original principal amount of One Hundred Sixty-Nine Thousand Eight Hundred Eleven Dollars And Zero Cents, ($169,811.00)."

19.     A true and correct redacted copy of CitiMortgage's Proof of Claim is attached hereto as Exhibit "C."

20.     On December 13, 2017, CitiMortgage made an appearance in the Bankruptcy Case and filed a Notice of Appearance through its counsel.

**2)    Plaintiff Amended her Chapter 13 Plan Which Provided for the Surrender of the Property.**

21.     On February 28, 2018, Plaintiff filed her Amended Chapter 13 Plan providing for the surrender of the Property and identifying CitiMortgage as the creditor for the related claim for which the Property was collateral.

22.     A true and correct redacted copy of the Plaintiff's Amended Chapter 13 Plan is attached hereto as Exhibit "D."

23.     On July 2, 2018, Plaintiff's Amended Chapter 13 Plan was confirmed by the Bankruptcy Court and on July 9, 2018, the automatic stay, as to the *in rem* enforcement of the Deed of Trust securing the Account, was lifted.

**3)    Defendant CitiMortgage Transferred Servicing of the Account to Cenlar.**

24.     After the Plaintiff's Bankruptcy Plan was confirmed, CitiMortgage hired Cenlar as its debt collector to sub-service Plaintiff's Account, despite the fact that the Account was included in her bankruptcy and Plaintiff had sold the Property subject to the first lien on the Property.  As a debt collector, Cenlar's sole role was to collect on the Account and all of its activities and actions related to the Account were done for the purposes of debt collection.  On or about March 26, 2019, CitiMortgage filed a Notice of Address Change in the Bankruptcy Case indicating that Cenlar is now collecting for CitiMortgage on the Account.  CitiMortgage then updated its reporting to

TransUnion to reflect that the Account had been transferred or sold, that it was included in a Chapter 13 Bankruptcy and no longer listed a balance on the Account.

25.     A true and correct redacted copy of relevant portions of Plaintiff's TransUnion credit report dated March 22, 2021 showing the update about the Account being transferred or sold is attached hereto as Exhibit "E."

> **4)      The Debt was Discharged as to Plaintiff's Personal Liability and the Discharge Injunction Went into Effect.**

26.     On December 3, 2020, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order").  The Discharge Order followed Official Form 318, including the explanatory language contained therein about the effect of the discharge.  The Discharge Order discharged Plaintiff from any personal liability for the debt created by the Account.  Included with the Discharge Order was an explanation of the general injunction prohibiting any attempt to collect discharged debts, warning all creditors, in conspicuous language, that "**CREDITORS CANNOT COLLECT DISCHARGED DEBTS**" and that "Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally.  Creditors who violate this order can be required to pay debtors' damages and attorney's fees."

27.     On December 5, 2020, the Bankruptcy Noticing Center sent a copy of the Discharge Order to Defendants Cenlar and CitiMortgage by first-class mail.  These mailings, which were not returned, constituted notice to Defendants of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay of 11 U.S.C. § 362 with the discharge injunction imposed by 11 U.S.C. § 524(a).

28.     A true and correct redacted copy of the Discharge Order is attached hereto as Exhibit "F."

29.     Once the Discharge Order was entered, the debt became unsecured as Plaintiff's personal liability was extinguished and she was not in title to the Property when the bankruptcy was filed, as the Property was sold to Maridan 53, LLC prior to the bankruptcy filing.

30.     At no time during the pendency of Plaintiff's Bankruptcy Case did Defendants or any other person or entity object to or dispute the details or completeness of the claim regarding the Account listed on Schedule D to Plaintiff's Petition.

31.     At no time did Plaintiff reaffirm the debt on the Account with any person or entity.

32.     At no time did the Bankruptcy Court declare the debt on the Account to be non-dischargeable.

33.     After Plaintiff's discharge, Defendants failed to remove the Account from their active loan servicing systems, failed to place a bankruptcy discharge hold on the Account, and continued with normal mortgage collection activities such as credit reporting and monthly account reviews.

**B.     During Plaintiff's Bankruptcy Case and Post Discharge, Defendant CitiMortgage Engaged in Prohibited, Harassing and Deceptive Collection Actions Against Plaintiff.**

34.     On at least five occasions after the servicing of the debt on the Account had been transferred to Cenlar, including at least two occasions post-discharge, Defendant CitiMortgage impermissibly accessed Plaintiff's protected Equifax credit file containing her confidential, personal and financial information and obtained and used her consumer report(s) from Equifax to further its *in personam* collection attempts against Plaintiff on the discharged debt.

35.     In order to obtain and use Plaintiff's consumer reports, CitiMortgage misrepresented information to Equifax about the status of the Account, representing to Equifax that the Account was open, and owing by Plaintiff, and therefore, it had a legally permissible purpose to conduct account reviews and access Plaintiff's credit file and obtain her consumer

report.  CitiMortgage's purported permissible purpose, however, was false because once the servicing of the Account was transferred to Cenlar and the debt had been discharged, it no longer had the right to access Plaintiff's credit reports as the Account no longer existed.  Moreover, title to the Property had transferred to a new owner prior to the bankruptcy, so the debt became unsecured at the time of discharge.  Thus, Plaintiff did not have possession of the Property, did not have title to Property and could not participate in any loss mitigation, and no longer had an account with CitiMortgage when CitiMortgage repeatedly accessed Plaintiff's credit file after it transferred the Account to Cenlar and after the discharge.  Despite the filing of this lawsuit, CitiMortgage willfully and wantonly continued to access Plaintiff's credit file.

36.     Specifically, on April 13, 2020, Defendant CitiMortgage pulled Plaintiff's Equifax credit report even though it no longer had a legal purpose for accessing such credit report as it was no longer servicing the Account according to its own reporting to TransUnion Credit bureau, and Plaintiff was not in title to the Property.

37.     On July 17, 2020, Defendant CitiMortgage pulled Plaintiff's Equifax credit report even though it no longer had a legal purpose for accessing such credit report as it was no longer servicing the Account according to its own reporting to TransUnion Credit bureau, and Plaintiff was not in title to the Property.

38.     On October 9, 2020, Defendant CitiMortgage pulled Plaintiff's Equifax credit report even though it no longer had a legal purpose for accessing such credit report as it was no longer servicing the Account according to its own reporting to TransUnion Credit bureau, and Plaintiff was not in title to the Property.

39.     On January 11, 2021, Defendant CitiMortgage pulled Plaintiff's Equifax credit report even though it no longer had a legal purpose for accessing such credit report as the debt had

been discharged as to Plaintiff's personal liability and no debtor-creditor relationship existed between Plaintiff and CitiMortgage, and Plaintiff was not in title to the Property.

40.     On April 12, 2021, after the filing of this lawsuit, Defendant CitiMortgage pulled Plaintiff's Equifax credit report even though it no longer had a legal purpose for accessing such credit report as the debt had been discharged as to Plaintiff's personal liability and no debtor-creditor relationship existed between Plaintiff and CitiMortgage, and Plaintiff was not in title to the Property.

41.     True and correct redacted copies of relevant portions of Plaintiff's Equifax credit reports dated March 22 and June 24, 2021 showing CitiMortgage's impermissible account review inquiries are attached hereto as Exhibits "G" and "H," respectively.

**C.     Post Discharge, Defendant Cenlar Engaged in Prohibited, Harassing and Deceptive Collection Actions Against Plaintiff by Misreporting and Misrepresenting the Account to the Credit Bureaus.**

42.     After Plaintiff's personal liability on the Account had been discharged in Plaintiff's Bankruptcy Case, CitiMortgage, who is the master servicer on the discharged debt correctly reported that the Account was discharged in bankruptcy, but its agent and subservicer, Defendant Cenlar, continues to report the Account as a live debt despite the discharge and this lawsuit.  Such reports included inaccurate, negative, incomplete and misleading information to the CRAs about the Account to be included in Plaintiff's credit files and reported on Plaintiff's credit reports.  A credit report that continues to show a discharged debt as outstanding is unquestionably inaccurate and misleading, because end users will construe it to mean that Cenlar still has the ability to enforce the debt personally against Plaintiff, in that Plaintiff did not received a discharge, or that she has reaffirmed the debt notwithstanding the discharge, or that the debt has been declared non-dischargeable.  Additionally, Cenlar misrepresented that Plaintiff had a live debt and that she is

obligated to make monthly payments of either $1,734 or $1,926, which is unclear on the tradeline, thus reducing her debt to income ratio and limiting her ability to obtain new credit. As Cenlar is a debt collector, all of its actions, including reporting the Account post-discharge to the credit bureaus are for the purposes of debt collection.

43.      In December 2020, after Plaintiff's discharge of the debt, Defendant Cenlar started reporting to Equifax that the status of Plaintiff's Account was "Pays_as_Agreed," that the reported balance was $141,016 as of 12/2020 and claimed that payments were made in December of 2020 and in January, February and March of 2021, but failed to disclose that the debt was included and discharged in Plaintiff's Bankruptcy Case and had a zero balance.

44.      A true and correct redacted copy of relevant portions of Plaintiff's Equifax credit report dated March 22, 2021 showing Cenlar's reporting is attached hereto as Exhibit "I."

45.      In January 2021, Defendant Cenlar started reporting to Experian that the status of Plaintiff's Account was "Open/Never late," that the balance as of March 2021 was $138,104, and claimed that payments were made on the Account in January, February and March of 2021, but failed to disclose that the debt was included and discharged in Plaintiff's Bankruptcy Case and had a zero balance.

46.      A true and correct redacted copy of relevant portions of Plaintiff's Experian credit report dated March 22, 2021 showing Cenlar's reporting is attached hereto as Exhibit "J."

47.      In January 2021, Defendant Cenlar started reporting to TransUnion that the status of Plaintiff's Account was "Current Account," that the balance as of 03/2021 was $138,104, and claimed that payments were made on the Account in January, February and March of 2021, but failed to disclose that that the debt was included and discharged in Plaintiff's Bankruptcy Case and had a zero balance.

48.     A true and correct redacted copy of relevant portions of Plaintiff's TransUnion credit report dated March 22, 2021 showing Cenlar's reporting is attached hereto as Exhibit "K."

49.     On March 31, 2021, Plaintiff filed this lawsuit.  Since the lawsuit was filed, Cenlar has proactively sent misleading information to the CRAs stating that this debt is owed and it has a right to collect it despite the fact that Cenlar was aware that the Plaintiff does not have title to the home in question and that Plaintiff's personal liability has been discharged in bankruptcy.

50.     On or about May 5, 2021, after this lawsuit was filed and Defendant Cenlar made an appearance, it ratified its earlier misconduct rather than attempting to mitigate the damages by correcting the credit reporting, and reported to Equifax that the status of Plaintiff's Account was "Pays_as_Agreed," that the Reported Balance was $136,599 and claimed that the last payment was made on April 1, 2021, but failed to disclose that the debt was included and discharged in Plaintiff's Bankruptcy Case and had a zero balance.

51.     A true and correct redacted copy of relevant portions of Plaintiff's Equifax credit report dated June 24, 2021 showing Cenlar's reporting is attached hereto as Exhibit "L."

52.     On or about May 5, 2021, after this lawsuit was filed and Defendant Cenlar made an appearance, it ratified its earlier misconduct rather than attempting to mitigate the damages by correcting the credit reporting, and reported to TransUnion that the status of Plaintiff's Account was "Current Account," that the balance was $136,599, and claimed that the last payment was made on April 12, 2021, but failed to disclose that that the debt was included and discharged in Plaintiff's Bankruptcy Case and had a zero balance.

53.     A true and correct redacted copy of relevant portions of Plaintiff's TransUnion credit report dated June 14, 2021 showing Cenlar's reporting is attached hereto as Exhibit "M."

54.    Since Cenlar began reporting the Account to the CRAs in December of 2020, misrepresenting it as a live debt with a monthly mortgage payment due and owing each month, multiple would-be creditors and current creditors have made inquiries into Plaintiff's credit files and have seen and considered Cenlar's misreporting of the Account.  *See* Exhibits "J," "K," "L," and "M."

55.    As a result of Cenlar's misrepresentations of the status of the Account on her credit reports, Plaintiff's debt to credit ratio was significantly decreased and Plaintiff has had at least two of her creditors reduce the credit limits on her accounts.

56.    For example, on April 23, 2021, Comenity Bank sent Plaintiff a letter advising that after a recent review of her credit file, they reduced the credit limit on Plaintiff's account with them to $160.00 "due to a significant decrease in your credit score from your credit bureau."  One of the issues that may have influenced that decision included "Balances on accts too high compared to credit limits and loan amounts."

57.    A true and correct redacted copy of the April 23, 2021 letter from Comenity Bank to Plaintiff is attached hereto as Exhibit "N."

58.    On June 11, 2021, Synchrony Bank sent Plaintiff a letter advising that after a recent review of her account, they reduced the credit limit on Plaintiff's account with them to $250.00 "based in part on a credit scoring system that was used to predict your creditworthiness."  One of the reasons for this decision included "Balances on Accounts Too High Compared To Credit Limits And Loan Amounts."

59.    A true and correct redacted copy of the June 11, 2021 letter from Synchrony Bank to Plaintiff is attached hereto as Exhibit "O."

## V. Grounds for Relief – Count I

### Texas Finance Code – Texas Debt Collection Act (TDCA)

60. Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs, as if fully rewritten here.

61. Defendants, through all of their post-discharge collection actions at issue, have violated the Texas Finance Code in numerous ways, including, but not limited to, the following:

a. Tex. Fin. Code § 392.301(a)(8), which prohibits Defendants from threatening to take an action prohibited by law. Inasmuch as: 1) the bankruptcy discharge injunction prohibits anyone from attempting to collect debts discharged in bankruptcy *in personam*; 2) the FCRA prohibits obtaining or using a consumer report without a permissible purpose; 3) the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt; and 4) the common law protects Plaintiff's privacy rights, Defendants' actions at issue of: 1) misreporting the Account as a live debt to the CRAs, which is prohibited by the FCRA requirements of a subscriber reporting accurate credit information to the CRAs; 2) impermissibly obtaining or using Plaintiff's consumer reports from Equifax post-discharge; and 3) refusing to cease these activities and correct themselves even after this lawsuit was filed ratifying their own conduct and failing to mitigate Plaintiff's damages were also violations of the TDCA, as they were threats of continued harassing collections and contacts and *in personam* collection attempts on the discharged debt, which violated the TDCA;

b. Tex. Fin. Code § 392.304(a)(8), which prohibits misrepresenting the character, extent, or amount of Plaintiff's debt on the Account, prohibited by this section of the TDCA, which was misrepresented to Plaintiff, the CRAs and other third parties that the Account, which had been discharged, was collectible from Plaintiff post-discharge by:

1) CitiMortgage's improper post-servicing and post-discharge credit account reviews to monitor or "analyze" the Account, making it appear as if the Account was still open, due and collectible from Plaintiff and that CitiMortgage had a legally permissible purpose and right to pull Plaintiff's credit and access and obtain her confidential, personal and financial information in her protected credit file with Equifax, at a

-13-

time CitiMortgage knew such information would be reported on Plaintiff's credit report for her and third parties to see, and even after this lawsuit was filed; and

2) Cenlar's furnishing inaccurate, incomplete and misleading information regarding the Account to the CRAs for Plaintiff, Defendants and other third parties to view, misrepresenting that the Account was a live debt, that Plaintiff either did not receive a discharge, reaffirmed the debt or that the debt was non-dischargeable, and that Plaintiff has an ongoing obligation to make monthly payments.

These were misrepresentations of the character, extent or amount of the subject debt, and by Defendants' continual refusal to cease these same coercive collection efforts even after this lawsuit demanding that they honor the discharge was filed, Plaintiff became increasingly concerned that something went wrong with the bankruptcy process and that she may still owe the debt, which is in violation of the TDCA;

c. Tex. Fin. Code § 392.304(a)(19), which prohibits Defendants' use of false representations or deceptive means to collect a debt, for the reasons stated in the preceding paragraphs (a-b); Defendants, through their false representations at issue and deception, intentionally tried to coerce or deceive Plaintiff into paying the discharged debt on the Account, knowing the debt on the Account was discharged in Plaintiff's Bankruptcy Case, rendering the debt legally uncollectible from Plaintiff *in personam*.

62.     Under Tex. Fin. Code Ann. § 392.403, Defendants' actions make them liable to Plaintiff for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees.  Also, Plaintiff's injuries resulted from Defendants' malice, actual fraud and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

63.     Because of Defendants' conduct, Plaintiff was forced to hire counsel to pursue this action, and Plaintiff's recoverable damages include her reasonable attorney's fees incurred in prosecuting this claim.

## VI.  GROUNDS FOR RELIEF - COUNT II

### INVASION OF PRIVACY

64.     Plaintiff repeats, re-alleges, and incorporates by reference all previous paragraphs above, as if rewritten herein their entirety.

65.     At all pertinent times, Plaintiff had a reasonable and lawful expectation not to be contacted and harassed by Defendants during her Bankruptcy Case and post-discharge.  Despite this lawsuit being filed on March 31, 2021, Defendant CitiMortgage continued to pull Plaintiff's Equifax credit report on April 12, 2021 and Defendant Cenlar continued to update its false credit reporting with Equifax and TransUnion on May 5, 2021, showing a reduction in the Account balance and recently made payments.

66.     Cenlar's contact by misreporting to the CRAs for Plaintiff to see, as well as CitiMortgage impermissibly accessing Plaintiff's protected credit file and consumer reports from Equifax by conducting the improper post-servicing and post-discharge account review inquiries at issue, were invasions of Plaintiff's private affairs and privacy rights.  These wrongful acts of Defendants caused injury to Plaintiff.

67.     CitiMortgage impermissibly obtaining Plaintiff's consumer report(s) from Equifax were invasions that would be highly offensive to a reasonable person, because Plaintiff's confidential, sensitive, personal and financial information was and is included in her Equifax consumer report(s) and credit file, which CitiMortgage accessed with no permissible reason.  The information CitiMortgage accessed and obtained about Plaintiff is private, protected, and not for public dissemination.  When Defendant CitiMortgage accessed Plaintiff's reports, it had already transferred the servicing of the Account to Cenlar.  Plaintiff had not consented to Defendants pulling her credit reports or accessing her protected credit files with any of the CRAs, and

CitiMortgage had no permissible purpose to obtain or use her consumer reports after it was no longer servicing the Account and certainly not post-discharge. The wrongful acts of CitiMortgage caused injury to Plaintiff.

68.    Plaintiff's expectation not to be contacted and harassed by Defendants on the Account was reasonable and lawful. Plaintiff had surrendered and permanently vacated the Property prior to filing her Bankruptcy Case and had not expressed any interest in retaining the Property afterwards. Moreover, the discharge injunction was in place when much of these actions took place, which prohibited Defendants from contacting her about the Account seeking collections from her.

69.    Plaintiff's belief that Defendants would not contact her during the times at issue was reasonable and justified. Plaintiff also believed Defendants' continued contact would cease after this lawsuit was filed; however, Defendants have continued these activities and failed to correct themselves, maliciously ratifying their own conduct and failing to mitigate Plaintiff's damages. Such wrongful acts and contacts by Defendants caused injury to Plaintiff which resulted in, or further exacerbated, her emotional anguish, mental distress, loss of time, and inconvenience, as well as other harm.

70.    Plaintiff's injuries resulted from Defendants' malice, which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VII.  GROUNDS FOR RELIEF - COUNT III

### FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. § 1681 *et seq.*) (CITIMORTGAGE ONLY)

71.    Plaintiff repeats, re-alleges, and incorporates by reference all previous paragraphs above, as if set forth herein in their entirety.

72.     Plaintiff brings claims against CitiMortgage under the FCRA under 15 U.S.C. §§ 1681n and o, entitling Plaintiff to relief against CitiMortgage for damages and attorney's fees for obtaining and using Plaintiff's consumer report under false pretenses or knowingly without a permissible purpose or negligently failing to comply with the requirements imposed by the FCRA, respectively.

73.     After it was no longer servicing the Account and even post-discharge, CitiMortgage impermissibly accessed Plaintiff's credit file with Equifax and obtained and used her consumer reports containing her confidential, personal and financial information by conducting account review inquiries with no legally permissible purpose.  Despite this lawsuit being filed on March 31, 2021, Defendant CitiMortgage continued to pull Plaintiff's Equifax credit report on April 12, 2021.  CitiMortgage's account review inquiries are examples of its impermissible pulls of Plaintiff's credit and prohibited action.  *See* Exhibits "G" and "H."

74.     The FCRA establishes very specific limits as to when and why an entity can obtain a consumer report:

> (f) CERTAIN USE OR OBTAINING OF INFORMATION PROHIBITED. – A person shall not use or obtain a consumer report for any purpose unless –
>
> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>
> (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b (f).

75.     Section 1681b(a)(3) of the FCRA lists the only purposes for which a consumer report can be obtained; it states, in relevant part:

> (a) IN GENERAL. – * * * any consumer reporting agency may furnish a consumer report under the following circumstances and no other:
>
> ***
>
> (3) To a person which it has reason to believe –

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

\*\*\*

(E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

(F) otherwise has a legitimate business need for the information-

\* \* \*

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

*See* 15 U.S.C. § 1681b (a)(3).

76.     Section 1681a(d)(1) defines a "consumer report" as:

(d) CONSUMER REPORT. –

(1) IN GENERAL. – The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of servicing as a fact in establishing the consumer's eligibility for-

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or
(C) any other purpose authorized under section 1681(b) of this title.

15 U.S.C. § 1681a (d)(1).

77.     CitiMortgage furnished false information to Equifax, misrepresenting it had a legally permissible purpose to conduct an inquiry and review of the Account, so it could gain access to Plaintiff's protected credit file with Equifax and impermissibly obtain and use her confidential, personal and financial information in her consumer report(s).

78.     CitiMortgage represented to Equifax that its alleged permissible purpose for conducting its post-servicing and post-discharge reviews on the Account was because the Account

-18-

was open, due, owing and collectible from Plaintiff. CitiMortgage's purported permissible purpose, however, was false because once the servicing of the Account was transferred to Cenlar and the debt had been discharged, it no longer had the right to access Plaintiff's credit reports as the Account no longer existed. Moreover, title to the Property had transferred to a new owner prior to the bankruptcy, so the debt became unsecured at the time of discharge. Thus, Plaintiff did not have possession of the Property, did not have title to Property and could not participate in any loss mitigation, and no longer had an account with CitiMortgage when CitiMortgage repeatedly accessed Plaintiff's credit file after the servicing of the Account was transferred and post-discharge. Despite the filing of this lawsuit, CitiMortgage willfully and wantonly continued to access Plaintiff's credit file. At no time after CitiMortgage assigned the servicing to Cenlar had Plaintiff sought credit from CitiMortgage or engaged in any business dealings with CitiMortgage, so there was no permissible purpose for CitiMortgage to pull Plaintiff's credit based on these reasons. Accordingly, there was no permissible purpose for CitiMortgage to obtain and use Plaintiff's consumer reports from Equifax which were illegally obtained.

79.     At all relevant times, CitiMortgage had actual knowledge that it transferred the servicing of the Account to Cenlar and as a result of the discharge being granted in the Bankruptcy Case, the discharge injunction was in effect, legally prohibiting CitiMortgage from pursuing any collection against Plaintiff on the discharged Account.

80.     CitiMortgage also had actual knowledge Plaintiff had not authorized it to pull her credit and obtain and use her consumer reports from the CRAs, because there was no longer a debtor-creditor relationship between Plaintiff and CitiMortgage post-servicing transfer and post-discharge after she surrendered the Property. Accordingly, CitiMortgage knew it was prohibited

from obtaining and using Plaintiff's consumer reports and her confidential and personal information kept therein by any of the CRAs post-discharge.

81.    CitiMortgage impermissibly obtaining or using of Plaintiff's private personal and financial information held in her consumer reports from the CRAs, when CitiMortgage had actual knowledge it had no legally permissible purpose to do so, constitutes CitiMortgage's knowing and willful violations of the FCRA under 15 U.S.C. § 1681n, or alternatively and at a minimum, negligent violations under 15 U.S.C. § 1681o.

82.    Plaintiff believes that, after reasonable discovery, she will be able to prove CitiMortgage obtained and used Plaintiff's consumer report(s), and private, personal and financial information therefrom, for the illegal purpose of attempting to collect on the discharged Account from Plaintiff personally.

83.    Plaintiff believes that, after reasonable discovery, she will be able to prove CitiMortgage used false pretenses, namely the representation(s) it made to Equifax that it intended to use Plaintiff's consumer report(s) for a permissible purpose, when, under the FCRA, CitiMortgage had no such permissible purpose to do so, in order to obtain and use Plaintiff's private, personal and financial information for the illegal purpose of attempting to collect the discharged debt on the Account from Plaintiff personally.

84.    Plaintiff believes that, after reasonable discovery, she will be able to prove CitiMortgage is unwilling or unable to prevent its system(s) or agents, from requesting and obtaining Plaintiff's consumer report(s) without a permissible purpose to do so, thereby subjecting Plaintiff to having her private, personal and financial information disclosed to CitiMortgage without her consent, authorization or other legal justification.

85.     As a direct and proximate result of CitiMortgage's conduct at issue, Plaintiff has suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress, entitling Plaintiff to an award of actual and statutory damages in an amount to be proved at trial, plus attorneys' fees, together with the costs of this action, pursuant to 15 U.S.C. §§ 1681n or o.

86.     The injuries suffered by Plaintiff as a direct result of CitiMortgage impermissibly obtaining and using Plaintiff's consumer report(s) post-discharge were attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to punitive damages pursuant to 15 U.S.C. § 1681n(a)(2).  Because CitiMortgage 's impermissible acquisition and use of Plaintiff's consumer report(s) will have a continuing adverse impact on Plaintiff, and because the violations may be ongoing in nature, CitiMortgage is liable for any and all future harm suffered by Plaintiff as a result of CitiMortgage's actionable conduct.

87.     After being afforded a reasonable time to conduct discovery, Plaintiff believes she will be able to show that, at all relevant times, CitiMortgage knew, and continues to know, that a discharge order granted by a U.S. Bankruptcy Court means discharged debts are no longer collectible from discharged debtors, but CitiMortgage has made a corporate decision to willfully and maliciously act contrary to this knowledge in its calculated decision to violate its duty and requirement to furnish accurate information to the CRAs, by furnishing to the CRAs false information of a purported permissible purpose to access the credit files of and obtain confidential personal and credit information and consumer reports for discharged consumers, alleging accounts with discharged debt are open and collectible or that consumers with discharged debt CitiMortgage is servicing have applied for new credit, when they have not, all to further CitiMortgage's illegal *in personam* collection attempts on discharged debt.

## VIII.  GROUNDS FOR RELIEF - COUNT IV

### FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA") (CENLAR ONLY)

88.     Plaintiff repeats, re-alleges, and incorporates by reference all the above paragraphs as if fully rewritten here.

89.     The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute prohibiting a catalog of activities in connection with the collection of debts by third parties.  See 15 U.S.C. § 1692, *et seq*.  The FDCPA imposes civil liability on any person or entity that violates its provisions, establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights.  The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

90.     In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose and forbids debt collectors from taking such action.  The substantive heart of the FDCPA lies in three broad prohibitions.  First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any

debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

91.     In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, the loss of jobs, and to invasions of individual privacy."  15 U.S.C. § 1692a.  Additionally, Congress found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers.  *See* 15 U.S.C. § 1692b.

92.     Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors.  The express purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to ensure debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692e.

93.     The FDCPA is a strict liability statute and provides for actual and statutory damages upon the showing of a single violation.  Also, the FDCPA is a remedial statute and, therefore, must be construed liberally in favor of the debtor/consumer.

94.     The FDCPA is to be interpreted in accordance with the "least sophisticated consumer" standard.  *See Brown v. Card Serv. Ctr*, 464 F.3d 450, 453 fn1 (3d Cir. 2006); *Graziano v. Harrison*, 950 F.2d 107, 111, fn5 (3rd Cir. 1991).  The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced."  *Id*.

95.     Because reporting a debt to a credit reporting agency can be seen as a communication in connection with the collection of a debt, the reporting of such a debt in violation of the provisions of § 1692e(8) can subject a debt collector to liability under the FDCPA." *Blanks v. Ford Motor Credit, et al.*, Not Reported in F.Supp2d, 2005 WL 43981 at *3 (N.D. Tex.) (citing *Sullivan v. Equifax, Inc.*, 2002 WL 799856, at *4 (E.D. Penn. April 19, 2002)).

96.     To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading representations or means in connection with the collection of any debt and sets forth a non-exhaustive list of certain per se violations of false and deceptive collection conduct. *See* 15 U.S.C. § 1692e(1)-(16).

97.     The deceptive and coercive collection actions of Cenlar at issue, by making misrepresentations to Plaintiff and the CRAs to be included on her credit report and disseminated to prospective credit grantors, violate 15 U.S.C. § 1692e(2)(A) and 15 U.S.C. § 1692f(1).  Despite this lawsuit being filed on March 31, 2021, Defendant Cenlar continued to update its false credit reporting with Equifax and TransUnion on May 5, 2021, showing a reduction in the Account balance and recently made payments, maliciously ratifying their own conduct and failing to mitigate Plaintiff's damages.

98.     All of Defendant Cenlar's actions at issue, described hereinabove, are the manifestations of Cenlar's practices and policies to ignore the provisions of the Bankruptcy Code applicable to them and illegally collect or attempt to collect pre-petition debts from unsophisticated debtors.

## IX.  GROUNDS FOR RELIEF – COUNT V

### DEFAMATION

99.     The allegations in the paragraphs set forth above are re-alleged and incorporated herein by this reference.

100.    Defendant Cenlar, an agent of Defendant CitiMortgage, provided statements of fact and misrepresentations, post-discharge, of the subject debt in Plaintiff's Bankruptcy Case for the Account regarding Plaintiff, her payment history, and the status of the Account to be published through the CRAs.  After the filing of this lawsuit, Cenlar has continued to misreport the status of the Account with the CRAs and CitiMortgage has continued to perform impermissible account reviews to be seen by Plaintiff and other third parties on her Equifax credit report.

101.    Defendants may be held liable for the CRAs' republication of the false and defamatory statements because Defendants' actions created a reasonable risk that the defamatory matter would be communication to other parties by the CRAs.

102.    The published statements referred to Plaintiff and were false.

103.    The published statements were defamatory, as the false statements constituted an invasion of the Plaintiff's interests in her reputation and good name and has resulted in damage to her credit.

104.    The publication of such false statements of fact about Plaintiff, her payment history, and the status of the Plaintiff's mortgage loan account was done with actual malice and/or willful intent to injure the Plaintiff.

105.    Actual malice is defined as publishing a statement with knowledge of or reckless disregard for its falsity.

-25-

106.    Defendants acted with actual malice and/or willful intent to injure the Plaintiff because they willfully provided for publication of false information regarding Plaintiff, her payment history, and the status of Plaintiff's mortgage loan account with knowledge of the falsity of such information, having been informed of the truth by Plaintiff.

107.    Defendants' publication of the false information regarding Plaintiff, her payment history, and the status of the discharged Account was also done with reckless disregard for the truth, which is demonstrated by Defendants' pattern of ignoring Plaintiff's dispute of such information as set forth above.

108.    Defendants' malice may be inferred from the fact that Defendants continually published false and misleading information regarding Plaintiff, her payment history, and the status of the Account post-discharge to the CRAs and by their failure to correct such statements after being specifically informed of the falsity of such information.  Moreover, Defendants are fully aware that 11 U.S.C.S. § 524(c) invalidates any post-discharge modification(s) to the extent that they seek to re-impose the personal liability of the debtor.  As there is no mechanism under bankruptcy code which allows a post-discharge reaffirmation of the Account, Defendant Cenlar is fully aware that it has no legal basis to report the Account as a live debt.  Furthermore, Defendants continue to publish false and misleading information regarding Plaintiff, her payment history, and the status of the Account post-discharge to the CRAs, despite the lawsuit and despite the fact that their failure to correct the false credit reporting after being sued is further evidence of Defendants' malice.

109.    Defendants provided for publication the defamatory information both before and after notification of the falsity of such information by Plaintiff.  Additionally, each time the false

statements were presented to a third party, in the form of credit inquiries, a new publication occurred.

110.    Plaintiff has suffered actual damages, including increased costs of credit, increased interest rates, attorney's fees and/or out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of Defendants' publication of defamatory statements.

111.    Plaintiff is entitled to actual damages as a result of Defendants' publication of defamatory statements.

## X. Vicarious Liability/*Respondeat Superior*

112.    Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principal, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability on Defendants for all such actions under the doctrine of *respondeat superior* and/or vicarious liability.  This includes, but is not limited to, CitiMortgage being liable for all acts of Cenlar at issue in this matter, as Cenlar was acting as the servicer of the Account and a duly authorized agent or representative of CitiMortgage at all times at issue.

## XI. Damages

113.    In addition to any damages previously stated hereinabove, the conduct of Defendants has proximately caused Plaintiff past and future monetary loss; past and future mental distress, emotional anguish and a discernable injury to Plaintiff's emotional state; and other damages, evidence for all of which will be presented to the jury.  Moreover, dealing with the

consequences of Defendants' actions and constantly having to monitor her credit reports has cost Plaintiff time and mental energy, which are precious to her.

114.    As stated previously, Cenlar's misreporting of the Account as a live debt with a nearly $2,000 monthly mortgage payment due and owing every month has been seen by multiple current and would-be creditors.  Cenlar's actions have caused actual damage to Plaintiff in that such misreporting has resulted in loss of credit capacity, decreased Plaintiff's credit score and significantly increased Plaintiff's debt to credit ratio, resulting in at least two of her current creditors to reduce her credit limit.

115.    Defendants' actions at issue not only brought back to Plaintiff all the stress and array of negative emotions she suffered in having to file for bankruptcy, but they were now increased, and a feeling of hopelessness, despair, extreme anxiety and worry, overtook her.  As a result of Defendants' actions at issue, Plaintiff has suffered an extreme degree of mental anguish and harm.  Plaintiff has suffered a tremendous amount of stress, anxiety, nervousness, frustration, and anger which reached a level that physically affected her and negatively impacted her day-to-day life causing or exacerbating the frequency and degree of her headaches, stress, anxiety, stomach problems and insomnia.  In addition, Cenlar's illegal reporting of a discharged debt on Plaintiff's credit reports is causing strained and stress on her relationships with her mother and her children as it created uncertainty and a feeling of loss of control over her life.

116.    The sanctity of Plaintiff's privacy is precious to her and to lose that as a result of Cenlar misreporting false and defamatory information to the CRAs to be added to her credit file and CitiMortgage continuing to impermissibly access her credit file, has added further to Plaintiff's mental anguish, distress and harm.  To have lost that imposes upon Plaintiff numerous emotions: frustration, confusion, uncertainty, anger, fear, defensiveness, distrust.  If someone entered

Plaintiff's home without her knowledge or consent and rifled through her personal and private things, no one would question that she felt violated by the obvious invasion of her privacy. But, for some reason, when Defendants feel free to rummage through Plaintiff's private personal and financial information without Plaintiff's knowledge or consent, and without a legal permissible purpose to do so, it is "assumed" (at least by Defendants) that no harm has been done and this assumption is wrong.

117.    It is also greatly concerning to Plaintiff that her private personal and financial information is routinely transmitted to a company with whom she no longer has a relationship. Plaintiff has no idea what Defendants intend to do with her private and personal information, which adds further to her frustration, uncertainty, anger, fear, defensiveness and distrust of Defendants, further adding to her emotional anguish and resulting physical harm and negatively impacting her day-to-day life. Especially in this day and age where data breaches have become commonplace, Plaintiff is anxious and troubled about how safe her most private information is in the hands of a company that is obtaining it illegally.

118.    After this suit was filed, Defendants have continued the false credit reporting and illegal accessing of her credit file, ratifying their earlier conduct rather than mitigating it. This has exacerbated Plaintiff's feeling of helplessness and loss of control of her life in that she believed after filing bankruptcy and certainly after receiving a discharge of the subject mortgage debt, she would be protected and would finally have a fresh start and could begin a positive, new chapter in her life. Defendants continue to deny her the fresh start Congress intended for debtors in the Bankruptcy Code. As Defendants have refused to cease its collection efforts despite Plaintiff's demand that they honor the discharge, Plaintiff has become increasingly concerned that something

went wrong with the bankruptcy process and that she may owe the debt which has caused her further anxiety and fear of what may happen to her if she does not pay it.

119.    At all relevant times, Defendants knew, and they continue to know, that, pursuant to a discharge order granted by a U.S. Bankruptcy Court, discharged debts are no longer legally collectible, but Defendants made a corporate decision to act knowingly, willfully, maliciously, and contrary to their/its knowledge of bankruptcy law, to attempt to collect on the debt they knew had been discharged as a result of Plaintiff's Bankruptcy Case.  Defendants had no right to engage in any of their actions at issue.

120.    Plaintiff believes that, after reasonable discovery in this case, she will be able to show that all actions taken by, or on behalf of, Defendants were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiff, with the actual knowledge that such actions were in violation of the law.

121.    Plaintiff believes that, after reasonable discovery, she will be able to show that Defendants have been involved in numerous disputes involving complaints about the type of conduct at issue here; nevertheless, Defendants, intentionally and knowingly, have refused to correct their policies and comply with applicable laws, of which laws they are well-aware.

122.    Plaintiff believes that, after reasonable discovery, she will be able to show that Defendants have engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with their established policies and procedures, with respect to knowingly, willfully, intentionally, and maliciously attempting to collect on debts included in an active bankruptcy or discharged in bankruptcy.  Accordingly, Defendants are subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct

by Defendants.  Moreover, Plaintiff's injuries resulted from Defendants' malice, and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

123.    Plaintiff believes that, after reasonable discovery, she will be able to show that Defendants' actions at issue were part of Defendants' illegal design(s), implemented in their policies and procedures, to profit by harassing unsophisticated debtors and collecting debts that had been included and discharged in each of debtor's bankruptcy cases.

124.    Due to Defendants' conduct, Plaintiff was forced to hire counsel, and her damages include reasonable attorney's fees incurred in prosecuting her claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Kimberly Jesse Volpe aka Kimberly Lackey prays the Court:

A.    Enter judgment in favor of Plaintiff and against Defendants, joint and severally, for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendants' violations of the TDCA, Plaintiff's privacy rights, and defamation, against CitiMortgage for violations of the FCRA, and against Cenlar for violations of the FDCPA;

B.    Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.    Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.    Grant such other and further relief, in law or equity, to which Plaintiff might show she is justly entitled.

Respectfully submitted,

/s/ James J. Manchee
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
MANCHEE & MANCHEE, PC
5048 Tennyson Parkway, Suite 250
Plano, Texas 75024
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2021, a true and correct copy of the foregoing document
was served upon all counsel of record via the Court's CM/ECF system pursuant to the Federal
Rules of Civil Procedure.

/s/ James J. Manchee
James J. Manchee

## Fill in this information to identify your case:

| | | | |
|---|---|---|---|
| Debtor 1 | **Kimberly** | **Jesse** | **Volpe** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **NORTHERN DISTRICT OF TEXAS**

Case number
(if known) _____

☐ Check if this is an amended filing

Official Form 106D

## Schedule D: Creditors Who Have Claims Secured by Property                           12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).**

1. **Do any creditors have claims secured by your property?**

   ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

   ☑ Yes. Fill in all of the information below.

### Part 1:    List All Secured Claims

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

|  | Column A<br>Amount of claim<br>Do not deduct the value of collateral | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|

**2.1**

**Citimortgage Inc**
Creditor's name
**Attn: Bankruptcy**
Number    Street
**PO Box 6423**

_____

Describe the property that secures the claim:

**907 Tulane Dr., Arlington, TX 76012**

Amount of claim: **$150,899.00**    Value of collateral: **$232,452.00**

| Sioux Falls | SD | 57117 |
|---|---|---|
| City | State | ZIP Code |

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)
   **FHA Real Estate Mortgage**

**Date debt was incurred    10/2011**    Last 4 digits of account number    **9    9    8    0**

**Mortgage is being paid by Maridan 53, LLC which purchased the property under a wrap-around transaction in 08/2017**

**Add the dollar value of your entries in Column A on this page. Write that number here:**    **$150,899.00**

Official Form 106D          Schedule D: Creditors Who Have Claims Secured by Property          page 1

**EXHIBIT "A"**

| Information to identify the case: | | | | |
|---|---|---|---|---|
| Debtor 1 | **Kimberly Jesse Volpe** | | | Social Security number or ITIN **xxx–xx–**■ |
| | First Name | Middle Name | Last Name | EIN _ _–_ _ _ _ _ _ _ |
| Debtor 2 (Spouse, if filing) | | | | Social Security number or ITIN _ _ _ _ |
| | First Name | Middle Name | Last Name | EIN _ _–_ _ _ _ _ _ _ |
| United States Bankruptcy Court | **Northern District of Texas** | | | Date case filed for chapter **13 11/2/17** |
| Case number: | **17–44426–mxm13** | | | |

## Official Form 309I

## Notice of Chapter 13 Bankruptcy Case

12/15

For the debtors listed above, a case has been filed under chapter 13 of the Bankruptcy Code. An order for relief has been entered.

**This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines. Read both pages carefully.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors, the debtors' property, and certain codebtors. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although debtors can ask the court to extend or impose a stay.

Confirmation of a chapter 13 plan may result in a discharge. Creditors who assert that the debtors are not entitled to a discharge under 11 U.S.C. § 1328(f) must file a motion objecting to discharge in the bankruptcy clerk's office within the deadline specified in this notice. Creditors who want to have their debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office by the same deadline. (See line 13 below for more information.)

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at www.pacer.gov).

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**To help creditors correctly identify debtors, debtors submit full Social Security or Individual Taxpayer Identification Numbers, which may appear on a version of this notice. However, the full numbers must not appear on any document filed with the court.**

**Do not file this notice with any proof of claim or other filing in the case. Do not include more than the last four digits of a Social Security or Individual Taxpayer Identification Number in any document, including attachments, that you file with the court.**

| | | About Debtor 1: | About Debtor 2: |
|---|---|---|---|
| 1. | **Debtor's full name** | Kimberly Jesse Volpe | |
| 2. | **All other names used in the last 8 years** | fka Kimberly Lackey | |
| 3. | **Address** | ■ | |
| 4. | **Debtor's attorney** Name and address | Marcus B. Leinart Leinart Law Firm 11520 N. Central Expressway Suite 212 Dallas, TX 75243 | Contact phone: (469) 232–3328 Email: ecf@leinartlaw.com |
| 5. | **Bankruptcy trustee** Name and address | Pam Bassel 7001 Blvd 26 Suite 150 North Richland Hills, TX 76180 | Contact phone: (817) 916–4710 Email: fwch13cmecf@fwch13.com |
| 6. | **Bankruptcy clerk's office** Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at www.pacer.gov. | 501 W. Tenth Street Fort Worth, TX 76102 | Office Hours: Mon.–Fri. 8:30–4:30 Contact Phone 817–333–6000 |

**For more information, see page 2**

**EXHIBIT "B"**

Debtor **Kimberly Jesse Volpe**                                                                 Case number **17–44426–mxm13**

| | | |
|---|---|---|
| **7. Meeting of creditors** Debtors must attend the meeting to be questioned under oath. In a joint case, both spouses must attend. Creditors may attend, but are not required to do so. | **December 5, 2017 at 02:00 PM** **The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket.** | Location: 7001 Blvd 26, Suite 150, North Richland Hills, TX 76180 |
| **8. Deadlines** The bankruptcy clerk's office must receive these documents and any required filing fee by the following deadlines. | **Deadline to file a complaint to challenge dischargeability of certain debts:** **You must file:** • a motion if you assert that the debtors are not entitled to receive a discharge under U.S.C. § 1328(f) or • a complaint if you want to have a particular debt excepted from discharge under 11 U.S.C. § 523(a)(2) or (4). | Filing deadline: _____ |
| | **Deadline for all creditors to file a proof of claim (except governmental units):** | Filing deadline: 3/5/18 |
| | **Deadline for governmental units to file a proof of claim:** | Filing deadline: _____ |
| | **Deadlines for filing proof of claim:** A proof of claim is a signed statement describing a creditor's claim. A proof of claim form may be obtained at www.uscourts.gov or any bankruptcy clerk's office. If you do not file a proof of claim by the deadline, you might not be paid on your claim. To be paid, you must file a proof of claim even if your claim is listed in the schedules that the debtor filed. Secured creditors retain rights in their collateral regardless of whether they file a proof of claim. Filing a proof of claim submits the creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a proof of claim may surrender important nonmonetary rights, including the right to a jury trial. | |
| | **Deadline to object to exemptions:** The law permits debtors to keep certain property as exempt. If you believe that the law does not authorize an exemption claimed, you may file an objection. | Filing deadline: 30 days after the *conclusion* of the meeting of creditors |
| **9. Filing of plan** | The debtor has not filed a plan as of this date. A copy of the plan or summary and a notice of the hearing on confirmation will be sent separately. | |
| **10. Creditors with a foreign address** | If you are a creditor receiving a notice mailed to a foreign address, you may file a motion asking the court to extend the deadline in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. | |
| **11. Filing a chapter 13 bankruptcy case** | Chapter 13 allows an individual with regular income and debts below a specified amount to adjust debts according to a plan. A plan is not effective unless the court confirms it. You may object to confirmation of the plan and appear at the confirmation hearing. A copy or summary of the plan, if not enclosed, will be sent to you later, and if the confirmation hearing is not indicated on this notice, you will be sent notice of the confirmation hearing. The debtor will remain in possession of the property and may continue to operate the business, if any, unless the court orders otherwise. | |
| **12. Exempt property** | The law allows debtors to keep certain property as exempt. Fully exempt property will not be sold and distributed to creditors, even if the case is converted to chapter 7. Debtors must file a list of property claimed as exempt. You may inspect that list at the bankruptcy clerk's office or online at www.pacer.gov. If you believe that the law does not authorize an exemption that debtors claimed, you may file an objection by the deadline. | |
| **13. Discharge of debts** | Confirmation of a chapter 13 plan may result in a discharge of debts, which may include all or part of a debt. However, unless the court orders otherwise, the debts will not be discharged until all payments under the plan are made. A discharge means that creditors may never try to collect the debt from the debtors personally except as provided in the plan. If you want to have a particular debt excepted from discharge under 11 U.S.C. § 523(a)(2) or (4), you must file a complaint and pay the filing fee in the bankruptcy clerk's office by the deadline. If you believe that the debtors are not entitled to a discharge of any of their debts under 11 U.S.C. § 1328(f), you must file a motion by the deadline. | |

**EXHIBIT "B"**

United States Bankruptcy Court
Northern District of Texas

In re:                                                          Case No. 17-44426-mxm
Kimberly Jesse Volpe                                            Chapter 13
          Debtor

## CERTIFICATE OF NOTICE

District/off: 0539-4          User: tspelmon          Page 1 of 2          Date Rcvd: Nov 03, 2017
                             Form ID: 309I          Total Noticed: 51

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Nov 05, 2017.
db        +Kimberly Jesse Volpe,       ████████████, Suite 150,   North Richland Hills, TX 76180-8811
tr        +Pam Bassel,    7001 Blvd 26,    Suite 150,   North Richland Hills, TX 76180-8811
17876437  +Arlington Emergency Med Assoc.,    PO Box 960260,   Oklahoma City, OK 73196-0260
17876439  +Attorney General of Texas,    Collections Div- Bankruptcy Sec,    PO Box 12548,
           Austin, TX 78711-2548
17876440  +Baylor All Saints,    P.O. Box 460036,   Garland, TX 75046-0036
17876443  +Check N Title,    3906 Camp Wisdom,    Dallas, TX 75237-2472
17876444   Citimortgage Inc,    Attn: Bankruptcy,    PO Box 6423,   Sioux Falls, SD 57117
17876453  +Leinart Law Firm,    11520 N. Central Expressway,    Suite 212,   Dallas, Texas 75243-6608
17876454  +Linebarger Goggan Blair et al,    2777 N Stemmons Frwy. Ste. 1000,    Dallas, TX 75207-2328
17876455  +Mohela-Dept of Ed,    633 Spirit Dr,   Chesterfield, MO 63005-1243
17876457  +Panhandle Plains,    PO Box 839,   Canyon, TX 79015-0839
17876458  +Paypal Credit Inc.,    Attn: Bankruptcy Dept,   PO Box 5138,   Lutherville, MD 21094-5138
17876459  +Quest Diagnostics,    500 Plaza Drive,   Secaucus, NJ 07094-3656
17876466  +Saxon Mortgage Service,    PO Box 161489,   Fort Worth, TX 76161-1489
17876467  +Six Flags Membership,    2201 Road To Six Flags,   Arlington, TX 76011-5157
17876474  +Texas Health Presbyterian,    P.O. Box 460036,   Garland, TX 75046-0036
17876476  +Transformance,    8737 King George Dr.,   Dallas, TX 75235-2222
17876481  +Visa Dept Store National Bank-Macys,    Attn: Bankruptcy,    PO Box 8053,   Mason, OH 45040-8053

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
aty        E-mail/Text: ecf@leinartlaw.com Nov 03 2017 22:35:59    Marcus B. Leinart,    Leinart Law Firm,
           11520 N. Central Expressway,    Suite 212,   Dallas, TX 75243
17876438  +EDI: ATTWIREBK.COM Nov 03 2017 22:13:00    AT & T,    PO Box 90245,   Arlington, TX 76004-3245
17876435  +E-mail/Text: bankruptcy@rentacenter.com Nov 03 2017 22:38:49    Acceptance Now,
           Attn: Bankruptcy,    5501 Headquarters Dr,   Plano, TX 75024-5837
17876436  +E-mail/Text: bankruptcy@rentacenter.com Nov 03 2017 22:38:49    Acceptance Now,
           5501 Headquarters Dr,   Plano, TX 75024-5837
17876442  +EDI: CCS.COM Nov 03 2017 22:13:00    CCS,    Payment Processing Center,    P.O. Box 55126,
           Boston, MA 02205-5126
17876441  +EDI: CAPITALONE.COM Nov 03 2017 22:13:00    Capital One,   Attn: Bankruptcy,   PO Box 30253,
           Salt Lake City, UT 84130-0253
17876445  +EDI: WFNNB.COM Nov 03 2017 22:13:00    Comenity Bank,   Attn: Bankruptcy,   PO Box 182125,
           Columbus, OH 43218-2125
17876447  +EDI: RCSFNBMARIN.COM Nov 03 2017 22:13:00    Credit One Bank Na,    PO Box 98873,
           Las Vegas, NV 89193-8873
17876448  +E-mail/Text: CSIBKR@CREDITSYSTEMSINTL.COM Nov 03 2017 22:38:38
           Credit Systems International, Inc.    1277 Country Club Lane,    Fort Worth, TX 76112-2304
17876449   EDI: FORD.COM Nov 03 2017 22:13:00    Ford Motor Credit,    National Bankruptcy Service Center,
           PO Box 62180,   Colorado Springs, CO 80962
17876450  +EDI: BLUESTEM Nov 03 2017 22:13:00    Gettington.com,    PO Box 166,   Newark, NJ 07101-0166
17876452   EDI: IRS.COM Nov 03 2017 22:13:00    Internal Revenue Service,
           Centralized Insolvency Operations,    PO Box 7346,   Philadelphia, PA 19101-7346
17876456  +Fax: 407-737-5634 Nov 03 2017 23:07:22    Ocwen Loan Servicing, Llc,
           Attn: Research-Bankruptcy,    1661 Worthington Rd Ste 100,    West Palm Bch, FL 33409-6493
17876460  +E-mail/Text: bankruptcy@regionalmanagement.com Nov 03 2017 22:36:17    Regional Fin,
           230 W. Parker Rd.,    Plano, TX 75075-2352
17876462  +E-mail/Text: bankruptcy@regionalmanagement.com Nov 03 2017 22:36:17    Regional Finance,
           3917 W Camp Wisdom Rd.,    Dallas, TX 75237-2468
17876463  +E-mail/Text: bankruptcy@regionalmanagement.com Nov 03 2017 22:36:17    Regional Finance,
           PO Box 776,   Mauldin, SC 29662-0776
17876464  +E-mail/Text: bankruptcy@regionalmanagement.com Nov 03 2017 22:36:17    Regional Finance,
           3465 W. Walnut St. ste. 107,    Garland, TX 75042-7169
17876461  +E-mail/Text: bankruptcy@regionalmanagement.com Nov 03 2017 22:36:17    Regional Finance,
           1518 Pennsylvania Avenue,    Fort Worth, TX 76104-2027
17876465  +EDI: HFC.COM Nov 03 2017 22:13:00    Rooms To Go,    P O Box 703,   Wooddale, IL 60191-0703
17876468  +EDI: RMSC.COM Nov 03 2017 22:13:00    Synchrony Bank-Amazon,    Attn: Bankruptcy,
           PO Box 965060,   Orlando, FL 32896-5060
17876469  +EDI: RMSC.COM Nov 03 2017 22:13:00    Synchrony Bank-Care Credit,    Attn: Bankruptcy,
           PO Box 965060,   Orlando, FL 32896-5060
17876470  +EDI: RMSC.COM Nov 03 2017 22:13:00    Synchrony Bank-TJX,    Attn: Bankruptcy,   PO Box 965060,
           Orlando, FL 32896-5060
17876471   EDI: AISTMBL.COM Nov 03 2017 22:13:00    T-Mobile,    Attn: Bankruptcy,    PO Box 53410,
           Bellevue, WA 98015
17876446   E-mail/Text: pacer@cpa.state.tx.us Nov 03 2017 22:37:59    Comptroller of Public Accounts,
           Revenue Accounting- Bankruptcy Div,    PO Box 13528,   Austin, TX 78711
17876472   E-mail/Text: delinquenttax@tarrantcounty.com Nov 03 2017 22:37:04
           Tarrant County Tax Assesor-Collector,    Ron Wright, CTA,   PO Box 961018,
           Fort Worth, TX 76161-0018
17876473   E-mail/Text: bankruptcyclerk@tabc.texas.gov Nov 03 2017 22:38:30
           Texas Alcoholic Beverage Commission,    Licenses and Permit Division,    PO Box 13127,
           Austin,TX 78711-3127
17876475  +E-mail/Text: ridpacer@twc.state.tx.us Nov 03 2017 22:38:24    Texas Workforce Commission,
           TEC Building- Bankruptcy,    101 E 15th St,   Austin, TX 78778-0001

**EXHIBIT "B"**

```
District/off: 0539-4          User: tspelmon          Page 2 of 2          Date Rcvd: Nov 03, 2017
                             Form ID: 309I             Total Noticed: 51
```

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center
(continued)
```
17876480    +EDI: ECMC.COM Nov 03 2017 22:13:00      US Dept of Education,   Attn: Bankruptcy,   PO Box 16448,
             Saint Paul, MN 55116-0448
17876477     E-mail/Text: ginger.sanchez@usdoj.gov Nov 03 2017 22:38:08      United States Attorney,
             3rd Floor, 1100 Commerce St,   Dallas, TX 75242
17876478    +E-mail/Text: ustpregion06.da.ecf@usdoj.gov Nov 03 2017 22:37:05      United States Trustee,
             1100 Commerce St, Rm 9C60,   Dallas, TX 75242-9998
17876479    +E-mail/Text: ustpregion06.da.ecf@usdoj.gov Nov 03 2017 22:37:05
             United States Trustee- Northern District,   1100 Commerce St, Rm 976,   Dallas, TX 75242-0996
17876451     EDI: WACHOVIA.COM Nov 03 2017 22:13:00      Homeq Servicing,   Po Box 13716,
             Sacramento, CA 95853
17876482    +EDI: BLUESTEM Nov 03 2017 22:13:00      Webbank-Gettington,   215 S State St,   Ste 1000,
             Salt Lake City, UT 84111-2336
                                                                              TOTAL: 33

          ***** BYPASSED RECIPIENTS *****
NONE.                                                                         TOTAL: 0
```

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Nov 05, 2017                          Signature:  /s/Joseph Speetjens

---

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on November 2, 2017 at the address(es) listed below:
```
          Marcus B. Leinart   on behalf of Debtor Kimberly Jesse Volpe ecf@leinartlaw.com,
          ecfbackup@leinartlaw.com;llfecfbackup@yahoo.com
          Pam  Bassel    fwch13cmecf@fwch13.com
          United States Trustee    ustpregion06.da.ecf@usdoj.gov
                                                                              TOTAL: 3
```

**EXHIBIT "B"**

Fill in this information to identify the case:

Debtor 1 ___Kimberly Jesse Volpe___

___fka Kimberly Lackey___

Debtor 2 _____
(Spouse if filing)

_____

United States Bankruptcy Court for the: ___Northern___ District of ___Texas (Ft. Worth)___
                                                                    (State)

Case number ___17-44426___

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgements, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

CitiMortgage, Inc.

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

CitiMortgage, Inc.

Name

P.O. Box 6030

Number     Street

Sioux Falls, SD 57117-6030

City               State          Zip Code

Contact phone ___(866)613-5636___

Contact email ___CitiPOC1@citi.com;___
___CitiAssist4Trustee1@citi.com___

Where should payments to the creditor be sent? (if different)

CitiMortgage, Inc.

Name

P.O. Box 688971

Number     Street

Des Moines, IA 50368-8971

City               State          Zip Code

Contact phone ___(866)613-5636___

Contact email ___CitiPOC1@citi.com;___
___CitiAssist4Trustee1@citi.com___

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____     Filed on _____
                                                                                              MM  /  DD  /  YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

EXHIBIT "C"

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

**6.** Do you have any number you use to identify the debtor?

☐ No
☑ Yes.  Last 4 digits of the debtor's account or any number you use to identify the debtor:  __9980__ __ __ __ __

**7.** How much is this claim?   $ __146,842.64__

**Does this amount include interest or other charges?**

☐ No
☑ Yes.  Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Mortgage Loan

**9.** Is all or part of the claim secured?

☐ No
☑ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☑ Real Estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe:    907 TULANE DRIVE, ARLINGTON, TX 76012

**Basis for perfection:**    Security Instrument

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                    $ _____
Amount of the claim that is secured:        $  146,842.64
Amount of the claim that is unsecured:      $ 0        (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $  1,795.63

Annual Interest Rate (when case was filed)  4.25000 %
☑ Fixed
☐ Variable

**10.** Is this claim based on a lease?

☑ No
☐ Yes.  Amount necessary to cure any default as of the date of the petition.    $ _____

**11.** Is this claim subject to a right of setoff?

☑ No
☐ Yes.  Identify the property: _____

EXHIBIT "C"

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes.  *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_____) that applies. | $ _____ |

\*  Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:   Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am the guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  12/11/2017
              MM  /  DD  /  YYYY

*/s/ Troy G. Jacob*
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Troy | G. | Jacob |
| | First name | Middle name | Last name |
| Title | Bankruptcy Specialist | | |
| Company | CitiMortgage, Inc. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | P.O. Box 6030 | | |
| | Number           Street | | |
| | Sioux Falls, SD 57117-6030 | | |
| | City                              State      Zip Code | | |
| Contact phone | (866)613-5636 | Email | CitiPOC1@citi.com; CitiAssist4Trustee1@citi.com |

**EXHIBIT "C"**

## Mortgage Proof of Claim Attachment

**(12/15)**

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | Part 2: Total Debt calculation | Part 3: Arrearage as of Date of the Petition | Part 4: Monthly Mortgage Payment |
|---|---|---|---|
| Case number: 17-44426 | Principal balance: $150,598.79 | Principal and interest due: $835.37 | Principal & interest: $835.37 |
| Debtor 1: Kimberly Jesse Volpe | Interest due: $550.91 | Prepetition fees due: $0.00 | Monthly escrow: $560.36 |
| | Fees, costs due: $0.00 | Escrow deficiency for funds advanced: $0.00 | Private mortgage insurance: $144.79 |
| Debtor 2: | Other: $0.00 | Other: $0.00 | Option payment Plan: $0.00 |
| Last 4 digits to identify: 9 9 8 0 | Other: $0.00 | Other: $0.00 | Total monthly payment: $1,540.52 |
| Creditor: CitiMortgage, Inc. | Other: $0.00 | | |
| Servicer: | Other: $0.00 | Projected escrow shortage: $960.26 | |
| | Other: $0.00 | Less funds on hand: − $0.00 | |
| Fixed accrual/daily simple interest/other: Fixed Accrual | Escrow deficiency for funds advanced: $0.00 | Total prepetition arrearage: $1,795.63 | |
| | Less total funds on hand: − $4,307.06 | | |
| | Total debt: $146,842.64 | | |

**Official Form 410A**

**Page 1 of 2**

**Mortgage Proof of Claim Attachment**                                                                                           (12/15)

**Part 5: Loan Payment History from First Date of Default**

| | Account Activity | | | | | How Funds were applied/ Amount Incurred | | | | | Balance After Amount received or Incurred | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, Int and Esc past due balance | H. Amount to Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to Fees or charges | L. Unapplied Funds | M. Principal Balance | N. Accrued Interest balance | O. Escrow Balance | P. Fees/ Charges Balance | Q. Unapplied Funds Balance |
| 10/01/17 | $ 1,581.49 | $ - | $ - | Monthly Payment | 10/01/17 | $ 1,581.49 | $ - | $ - | $ - | $ - | $ - | $ 150,899.72 | $ - | $ 3,705.73 | $ - | $ - |
| 10/04/17 | $ - | $ - | $ (144.79) | Escrow Disbursement | 10/01/17 | $ 1,581.49 | $ - | $ - | $ (144.79) | $ - | $ - | $ 150,899.72 | $ - | $ 3,560.94 | $ - | $ - |
| 10/16/17 | $ - | $ 1,581.49 | $ - | Payment Received & Applied | 10/01/17 | $ - | $ 300.93 | $ 534.44 | $ 746.12 | $ - | $ - | $ 150,598.79 | $ - | $ 4,307.06 | $ - | $ - |
| 11/01/17 | $ 1,581.49 | $ - | $ - | Monthly Payment | 11/01/17 | $ 1,581.49 | $ - | $ - | $ - | $ - | $ - | $ 150,598.79 | $ - | $ 4,307.06 | $ - | $ - |

Official Form 410A                                          Mortgage Proof of Claim Attachment                                          Page 2 of 2

**EXHIBIT "C"**

**Escrow Account Disclosure**

citi

CitiMortgage     P.O. Box 6243
1000 Technology Drive
O'Fallon, MO 63368-2240
TTY Services available: Dial 711 from the United States,
Dial 1-866-280-2050 from Puerto Rico

**Page 1**

**Referral Escrow Analysis**

Account Number:
Analysis Date:                              November 06, 2017

CASE#: 17-44426

K I M   L A C K E Y

TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR
IS SUBJECT TO AN AUTOMATIC STAY OF A BANKRUPTCY ORDER
UNDER TITLE 11 OF THE UNITED STATES CODE, THIS NOTICE IS
FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND
DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN
ATTEMPT TO COLLECT ANY SUCH OBLIGATION.

### Mortgage Payment

| | | |
|---|---|---|
| New Monthly Payment Amount: | **$1,540.52** | New Payment Effective: | **December 01, 2017** |

| | CURRENT PAYMENT | NEW PAYMENT | |
|---|---|---|---|
| PRINCIPAL/INTEREST | 835.37 | 835.37 | • Your new monthly escrow payment represents 1/12th |
| MONTHLY ESCROW PAYMENT | 746.12 | 705.15 |   of your projected annual escrow disbursements. |
| TOTAL PAYMENT | 1,581.49 | 1,540.52 | |

### Projections for the coming Year

Please keep this statement for reference next year.

| MONTH | PAYMENTS TO ESCROW ACCT | PAYMENTS FROM ESCROW ACCT | DESCRIPTION | PROJECTED BALANCE | REQUIRED BALANCE |
|---|---|---|---|---|---|
| Starting Balance: (Activity Assumed through November, 2017) | | | | $2,891.02 | $5,267.32 |
| DEC 17 | 705.15 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 3,451.38 | 5,827.68 |
| DEC 17 | .00 | 4,706.96 | COUNTY TAX | 1,255.58- (a) | 1,120.72 (b) |
| JAN 18 | 705.15 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 695.22~ | 1,681.08 |
| FEB 18 | 705.15 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 134.86~ | 2,241.44 |
| MAR 18 | 705.15 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 425.50 | 2,801.80 |
| APR 18 | 705.15 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 985.86 | 3,362.16 |
| MAY 18 | 705.15 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 1,546.22 | 3,922.52 |
| JUN 18 | 705.15 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 2,106.58 | 4,482.88 |
| JUL 18 | 705.15 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 2,666.94 | 5,043.24 |
| AUG 18 | 705.15 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 3,227.30 | 5,603.60 |
| SEP 18 | 705.15 | 2,017.37 | HAZARD INSURANCE | 1,915.08 | 4,291.38 |
| SEP 18 | .00 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 1,770.29 | 4,146.59 |
| OCT 18 | 705.15 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 2,330.65 | 4,706.95 |
| NOV 18 | 705.15 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 2,891.01 | 5,267.31 |
| TOTALS: | $8,461.80 | $8,461.81 | | | |

• Mortgage Insurance, if any, is not included in the required low point calculation.

### Determining Your Escrow Shortage/Surplus

| | | |
|---|---|---|
| PROJECTED LOW-POINT: | -1,255.58 (a) | If your Projected Low-Point (a) is: |
| REQUIRED LOW-POINT (Cushion): | 1,120.72 (b) | • Less than your Required Low-Point (b), you have a shortage. |
| | | • Greater than your Required Low-Point (b), you have a surplus. |
| TOTAL ESCROW SHORTAGE: | **2,376.30** | • Equal to your Required Low-Point (b), the above does not apply. |

**CitiMortgage, Inc. appreciates your business.**

**EXHIBIT "C"**
INTERNET REPRINT

C26845                                                                                    03-16-16

## Escrow Account Disclosure Statement

Page 2
Account Number:
Analysis Date:                                  November 06, 2017
Referral Escrow Analysis

### Account History

| ITEM | ACTUAL PAYMENTS | PROJECTED PAYMENTS | INCREASE/ DECREASE |
|------|----------------|--------------------|--------------------|
| Please note the increases/decreases that may have occurred from the projections. This has impacted the shortage/surplus in this analysis reflected on the front side of this statement. | | | |
| MORTGAGE INSURANCE | 1,885.55 | 1,901.95 | - 16.40 |
| HAZARD INSURANCE | 2,114.66 | 2,039.01 | 75.65 |
| COMBINED TAXES | 4,706.96 | 4,444.37 | 262.59 |

This is a statement of actual activity in your escrow account from November 1, 2016 through November 06, 2017.
This section provides last year's projections and compares it with actual activity.

Your most recent monthly mortgage payment during the past year was $1,581.49 of which $835.37 was for principal and interest and $746.12 was credited to your escrow account.

| MONTH | ACTUAL PAYMENTS TO ESCROW ACCOUNT | PROJECTED PAYMENTS TO ESCROW ACCOUNT | ACTUAL PAYMENTS FROM ESCROW ACCOUNT | PROJECTED PAYMENTS FROM ESCROW ACCOUNT | DESCRIPTION | ACTUAL ESCROW RUNNING BALANCE | PROJECTED ESCROW RUNNING BALANCE |
|-------|-----------|-----------|-----------|-----------|-------------|-----------|-----------|
| Starting Balance:-------------------------------------------------------------- | | | | | | $2,978.93 | $4,640.62 |
| NOV 16 | .00 | 660.08 * | 148.07 | 148.07 | FHA MORTGAGE INSURANCE (MIP) | 2,830.86 | 5,152.63 |
| DEC 16 | .00 | 660.08 * | 144.79 | 148.07 * | FHA MORTGAGE INSURANCE (MIP) | 2,686.07 | 5,664.64 |
| DEC 16 | .00 | .00 | 4,706.96 | 4,444.37 * | COUNTY TAX | 2,020.89- | 1,220.27 |
| JAN 17 | .00 | 660.08 * | 144.79 | 148.07 * | FHA MORTGAGE INSURANCE (MIP) | 2,165.68- | 1,732.28 |
| FEB 17 | .00 | 660.08 * | 144.79 | 148.07 * | FHA MORTGAGE INSURANCE (MIP) | 2,310.47- | 2,244.29 |
| FEB 17 | .00 | .00 | 15.50 | .00 * | ADDITIONAL HAZARD INS PREM | 2,325.97- | 2,244.29 |
| MAR 17 | .00 | 660.08 * | 144.79 | 148.07 * | FHA MORTGAGE INSURANCE (MIP) | 2,470.76- | 2,756.30 |
| MAR 17 | .00 | .00 | 81.79 | .00 * | ADDITIONAL HAZARD INS PREM | 2,552.55- | 2,756.30 |
| APR 17 | .00 | 660.08 * | 144.79 | 148.07 * | FHA MORTGAGE INSURANCE (MIP) | 2,697.34- | 3,268.31 |
| MAY 17 | .00 | 706.95 * | 144.79 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 2,842.13- | 3,145.46 |
| JUN 17 | .00 | 706.95 * | 144.79 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 2,986.92- | 3,707.62 |
| JUL 17 | .00 | 706.95 * | 144.79 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 3,131.71- | 4,269.78 |
| AUG 17 | .00 | 706.95 * | 2,017.37 | 2,039.01 * | HAZARD INSURANCE | 5,149.08- | 2,937.72 |
| AUG 17 | .00 | .00 | 144.79 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 5,293.87- | 2,792.93 |
| SEP 17 | 9,144.39 | 706.95 * | 144.79 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 3,705.73 | 3,355.09 |
| OCT 17 | 746.12 | 705.15 * | 144.79 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 4,307.06 | 2,248.72 |
| NOV 17 | .00 | 705.15 * | 144.79 | 144.79 | FHA MORTGAGE INSURANCE (MIP) | 4,162.27 | 2,809.08 |
| Totals: | $9,890.51 | $8,905.53 | $8,707.17 | $8,385.33 | | | |

An asterisk (*) indicates a difference from a previous estimate either in the date or amount. Payment differences of $2.00 or less will not be marked with an asterisk.

Under Federal Law, your lowest monthly balance should not have exceeded $1,120.72 which is 1/6 of anticipated payments unless your mortgage contract or state law specifies a lower amount. Under your mortgage contract or state law, your lowest monthly balance should not have exceeded $1,120.72.

Please note: As a result of your bankruptcy case, this letter is not an attempt to collect debt from you or in any way violate any provision of the United States Bankruptcy Code. This letter has been sent to you for informational purposes only. This is not a bill or a request for payment, or a statement that you are personally obligated in any way to make a payment.

CitiMortgage may charge interest on funds advanced to pay your escrow items. If you do not repay the escrow advance within 60 days (of the Escrow Analysis Statement date above) interest will be charged on the outstanding advance amount. The rate of interest on the advance will be the Note rate applicable to your first mortgage loan. The monthly interest accrual will appear on your monthly Mortgage Statement.

When you provide a check, you authorize us to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. If we use your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

**EXHIBIT "C"**
INTERNET REPRINT

©2014 CitiMortgage, Inc. CitiMortgage, Inc. is an equal housing lender. Citibank, Citi, the Arc Design, and Citi and Arc Design are registered service marks of Citigroup Inc.

O671EP                                                                                                                          02-10-14

# Standing Statement

CitiMortgage, Inc. services the loan on the property referenced in this proof of claim.

In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of CitiMortgage, Inc., "Noteholder".

Noteholder directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Noteholder or has been duly endorsed. Noteholder is the original mortgagee or beneficary or the assignee of the security instrument for the referenced loan.

**EXHIBIT "C"**

# NOTE

OCTOBER 6, 2011                    HOUSTON                                    TEXAS
[Date]                             [City]                                   [State]

907 TULANE DRIVE, ARLINGTON, TEXAS 76012
[Property Address]

## 1.  PARTIES

"**Borrower**" means each person signing at the end of this Note, and the person's successors and assigns.
"**Lender**" means ACOPIA, LLC, A CORPORATION

and its successors and assigns.

## 2.  BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED SIXTY-NINE THOUSAND EIGHT HUNDRED ELEVEN AND
00/100                              **Dollars (U.S. $** 169,811.00                  )
plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of
the loan proceeds by Lender, at the rate of FOUR AND 250/1000                                     percent
(     4.250 %) per year until the full amount of principal has been paid.

## 3.  PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated
the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from
losses which might result if Borrower defaults under this Note.

## 4.  MANNER OF PAYMENT

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the 1st   day of each month beginning
on DECEMBER 1, 2011          . Any principal and interest remaining on the   1st   day of
NOVEMBER, 2041              , will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at 306 NORTHCREEK BLVD, SUITE 100,
GOODLETTSVILLE, TENNESSEE 37072
, or at such other place
as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $ 835.37
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to
principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants
of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge
were a part of this Note.

---

TEXAS - FHA FIXED RATE NOTE
TXFHA.NTE 05/01/08                              Page 1 of 3                        **DocMagic EForms**
www.docmagic.com

**EXHIBIT "C"**

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000                    percent (    4.000    %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive notice of intention to accelerate, and the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in

---

TEXAS - FHA FIXED RATE NOTE
TXFHA.NTE 05/01/08

*DocMagic eForms*
*www.docmagic.com*

**EXHIBIT "C"**

this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_____ (Seal)          _____ (Seal)
KIM LACKEY                     -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower          Pay to the order of CITIMORTGAGE, INC.
                                                  Without recourse on us
                                                  Citibank, N.A.

                                                  Frank Myers, Vice President
                                                  Citibank, N.A.

Pay to the Order of   Citibank, N.A.              Pay to the order of
Without Recourse   Acopia, LLC, A Corporation
By Georgia Banking Company as Attorney-In-Fact    without recourse on us
By: _____             CitiMortgage, Inc.
       Barbara A. Fox-Barber
Name: _____             Frank Myers, Sr. Vice President
Title: _____            CitiMortgage, Inc.

                                                  *[Sign Original Only]*

TEXAS - FHA FIXED RATE NOTE
TXFHA.NTE 05/01/08                       Page 3 of 3                    DocMagic eForms
                                                                        www.docmagic.com

**EXHIBIT "C"**

**Electronically Recorded**
Official Public Records

*Mary Louise Garcia*

Mary Louise Garcia

**Tarrant County Texas**

10/14/2011 12:39 PM    D211249826

PGS   16    $76.00

Submitter: ACS

After Recording Return To:
ACOPIA, LLC
306 NORTHCREEK BLVD, SUITE 100
GOODLETTSVILLE, TENNESSEE 37072
Loan Number:

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THIS DEED OF TRUST ("Security Instrument") is made on  OCTOBER 6, 2011 .
The grantor is  KIM LACKEY, AN UNMARRIED WOMAN AND EDUARDO HINOJOSO, AN UNMARRIED MAN

("Borrower").

The trustee is  THOMAS E. BLACK, JR.

whose address is  2905 CORPORATE CIRCLE, FLOWER MOUND, TEXAS 75028

("Trustee").
The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns).  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

ACOPIA, LLC, A CORPORATION                                ("Lender")
is organized and existing under the laws of  TENNESSEE
and has an address of  306 NORTHCREEK BLVD, SUITE 100, GOODLETTSVILLE,
TENNESSEE 37072
Borrower owes Lender the principal sum of  ONE HUNDRED SIXTY-NINE THOUSAND EIGHT
HUNDRED ELEVEN AND 00/100          Dollars (U.S. $ 169,811.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on  NOVEMBER 1, 2041 .

FHA TEXAS DEED OF TRUST - MERS
TXDOTZ.FHA 08/24/10                    Page 1 of 10                    DocMagic *eForms*
                                                                      www.docmagic.com

**EXHIBIT "C"**

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in TARRANT                                  County, Texas:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 04757874

| which has the address of | 907 TULANE DRIVE | |
|---|---|---|
| | [Street] | |
| ARLINGTON | ,Texas | 76012 | ("Property Address"): |
| [City] | | [Zip Code] | |

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing, canceling or assigning this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

FHA TEXAS DEED OF TRUST - MERS
TXDOTZ.FHA  08/24/10                              Page 2 of 10                              DocMagic eForms
                                                                                            www.docmagic.com

**EXHIBIT "C"**

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

    **3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

    FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

    SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

    THIRD, to interest due under the Note;

    FOURTH, to amortization of the principal of the Note; and

    FIFTH, to late charges due under the Note.

    **4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

    In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

    **5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant

FHA TEXAS DEED OF TRUST - MERS
TXDOTZ.FHA 08/24/10            Page 3 of 10           DocMagic eForms
www.docmagic.com

**EXHIBIT "C"**

or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

    **6.  Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    **7.  Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

    If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

    Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

    Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

    **8.  Fees.** Lender may collect fees and charges authorized by the Secretary.

    **9.  Grounds for Acceleration of Debt.**

        **(a)  Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

            (i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

            (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

        **(b)  Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

            (i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

**EXHIBIT "C"**

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c)  **No Waiver.**  If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d)  **Regulations of HUD Secretary.**  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e)  **Mortgage Not Insured.**  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within  60 DAYS from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS     from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option *may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.*

**10.  Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11.  Borrower Not Released; Forbearance by Lender Not a Waiver.**  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12.  Successors and Assigns Bound; Joint and Several Liability; Co-Signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.  Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  *The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.*  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when *given as provided in this paragraph.*

**14.  Governing Law; Severability.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument

---

FHA TEXAS DEED OF TRUST - MERS
TXDOTZ.FHA  08/24/10

Page 5 of 10

*DocMagic ⓔₐₓₓₑₛ*
*www.docmagic.com*

**EXHIBIT "C"**

or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and cost of title evidence. For the purposes of this paragraph 18, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.**

**If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by applicable law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the**

**EXHIBIT "C"**

purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with applicable law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one more trustee, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights remedies, powers and duties conferred upon Trustee herein and by applicable law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**21. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**22. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**23. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

☐ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☒ **Renewal and Extension of Liens Against Homestead Property.**

**EXHIBIT "C"**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ Acknowledgment of Cash Advanced Against Non-Homestead Property.

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

24. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this paragraph 24.

25. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)].

☐ Condominium Rider          ☐ Graduated Payment Rider      ☐ Growing Equity Rider
☐ Planned Unit Development Rider  ☐ Adjustable Rate Rider      ☐ Rehabilitation Loan Rider
☐ Non-Owner Occupancy Rider   ☒ Other [Specify]
                              Rider to Sec. Inst.,
                              Renewal/Extension Exhibit

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

**EXHIBIT "C"**

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 10 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
KIM LACKEY                 -Borrower

_____ (Seal)
EDUARDO HINOJOSO           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

Witness:                                   Witness:

_____                  _____

FHA TEXAS DEED OF TRUST - MERS
TXDOTZ.FHA  08/24/10                    Page 9 of 10                    DocMagic €Forms
                                                                       www.docmagic.com

**EXHIBIT "C"**

——————— [Space Below This Line For Acknowledgment] ———————

The State of TEXAS _____

County of TARRANT _____

    Before me, _LISA WOOD, NOTARY PUBLIC_____ ,

on this day personally appeared _KIM LACKEY AND EDUARDO HINOJOSO_____

_____

_____

known to me (or proved to me on the oath of _____

or through _TX DRIVER LICENSE_____ )
to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed
the same for the purposes and consideration therein expressed.

    Given under my hand and seal of office this _6_ day of _OCTOBER 2011_____ .

(Seal)

    _____
    Notary Public Signature

    My commission expires: _3-3-2015_____

FHA TEXAS DEED OF TRUST - MERS
TXDOTZ.FHA  08/24/10

Page 10 of 10

DocMagic *EForms*
www.docmagic.com

**EXHIBIT "C"**

EXHIBIT "A"

LOT 13, BLOCK 45, MEADOW PARK ESTATES, SECTION THIRTEEN, AN ADDITION TO THE CITY
OF ARLINGTON, TARRANT COUNTY, TEXAS, ACCORDING TO THE PLAT RECORDED IN VOLUME
388-115, PAGE 28, PLAT RECORDS, TARRANT COUNTY, TEXAS.

**EXHIBIT "C"**

# TEXAS REFINANCE RIDER

THIS TEXAS REFINANCE RIDER is made this   6th   day of   OCTOBER, 2011     ,
, and is incorporated into and is deemed to amend the Mortgage, Deed of Trust, or Deed to Secure
Debt (the "Security Instrument"), bearing the same date shown above and which is given by the undersigned
person or persons (collectively referred to as the "Borrower") to secure Borrower's Note to
ACOPIA, LLC
(the "Lender") of the same date ("Note") covering the property described in the Security Instrument, having
a street address of:
907 TULANE DRIVE, ARLINGTON, TEXAS 76012

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further agree:

1.    Paragraph 28 of the non-uniform covenants in the Security Instrument is amended to read in its
entirety as follows:

"28.  Lien Extended.  The Note is primarily secured by the lien described in Exhibit A, the exact terms of
which are incorporated in this paragraph by reference.  The lien has been transferred or assigned to Lender.
This Security Instrument is given as additional security.  In this paragraph, the term "lien" refers to all liens,
whether one or more, described in Exhibit A."

2.    New paragraph 29 is added to the non-uniform covenants in the Security Instrument as follows:

"29.  Application of Payments.  If any portion of the debt evidenced by the Note cannot be lawfully secured
by the lien given in this Security Instrument on the property and improvements, Borrower and Lender agree
that the first payments made on the Note shall be applied to that portion of the debt."

TEXAS REFINANCE RIDER
MB-0988  REV. 5/2001                          Page 1 of 2                          DocMagic *eForms*
                                                                                  www.docmagic.com

**EXHIBIT "C"**

IN CONSIDERATION OF the above covenants and agreements with Lender, Borrower has signed the Texas Refinance Rider.

_Kim Lackey_    10/6/11    _Eduardo Hinojoso_ 10-6-11
Borrower          Date      Borrower                  Date
KIM LACKEY                     EDUARDO HINOJOSO

Borrower          Date      Borrower                  Date

Borrower          Date      Borrower                  Date

TEXAS REFINANCE RIDER
MB-0988  REV. 5/2001             Page 2 of 2             DocMagic *eForms*
www.docmagic.com

**EXHIBIT "C"**

Return To:
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE , CA  91209-9071
Phone #: 800-331-3282


Prepared By:
CITIMORTGAGE, INC
SHEILA BROOKS
1000 TECHNOLOGY DRIVE, MS 321
O'FALLON , MO 63368-2240

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the receipt of which is hereby acknowledged,  Mortgage Electronic Registration Systems, Inc. "(MERS)" as nominee for Acopia, LLC its successors and assigns , whose address is Current Beneficiary Address: P.O. Box 2026, Flint, MI, 48501-2026 , herein designated as the Assignor, does hereby assign and transfer over unto CitiMortgage, Inc. , whose mailing address is 1000 Technology Drive, O'Fallon, MO, 63368 , herein designated as the Assignee, all rights accrued and to accrue under said Deed of Trust executed by Kim Lackey and Eduardo Hinojoso , to Original Beneficiary Name: Mortgage Electronic Registration Systems, Inc. "(MERS)" as nominee for Acopia, LLC its successors and assigns, Loan Date: 10/06/2011 , filed 10/14/2011  and recorded in Official Records Instrument No: D211249826 Book, Volume, or Liber No: NA Page: NA of the Public Records Tarrant County, Texas

Original Trustee: Thomas E. Black, Jr.
Description/Additional information: Lot 13, Block 45, Meadow Park Estates, Section Thirteen, an addition to the City of Arlington, Tarrant County, Texas, according to the plat recorded in Volume 388-115, Page 28, Plat Records, Tarrant County, Texas.
IN WITNESS WHEREOF, the said Assignor has caused these presents to be executed in its name, on 9/2/16 .

Mortgage Electronic Registration Systems, Inc. "(MERS)" as nominee for Acopia, LLC its successors and assigns

Sheila Brooks
Assistant Secretary


STATE OF **MISSOURI, ST. CHARLES COUNTY**

On _____9-2-16_____ before me, the undersigned, a notary public in and for said state, personally appeared **Sheila Brooks, Assistant Secretary of Mortgage Electronic Registration Systems, Inc. "(MERS)" as nominee for Acopia, LLC its successors and assigns** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

STARLA DODSON
Notary Public - Notary Seal
State of Missouri
Commissioned for Lincoln County
My Commission Expires: July 17, 2020
Commission Number: 12368339

Notary Public **Starla Dodson**

**Commission Expires: 07/17/2020**
Acting in the County of St. Charles County

**EXHIBIT "C"**

**Leinart Law Firm**
11520 N. Central Expressway
Suite 212
Dallas, Texas 75243

Bar Number:   00794156
Phone:    (469) 232-3328

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | | |
|---|---|---|---|
| In re: **Kimberly Jesse Volpe** | **xxx-xx-**█ | § | Case No:   **17-44426-mxm-13** |
| █ | | § | |
| | | § | Date:     **2/16/2018** |
| | | § | Chapter 13 |
| | | § | |

Debtor(s)

### *AMENDED 2/28/2018*
### DEBTOR'S(S') CHAPTER 13 PLAN
### (CONTAINING A MOTION FOR VALUATION)

#### DISCLOSURES

☑  This *Plan* does not contain any *Nonstandard Provisions*.

☐  This *Plan* contains *Nonstandard Provisions* listed in Section III.

☑  This *Plan* does not limit the amount of a secured claim based on a valuation of the *Collateral* for the claim.

☐  This *Plan* does limit the amount of a secured claim based on a valuation of the *Collateral* for the claim.

This *Plan* does not avoid a security interest or lien.

Language in italicized type in this *Plan* shall be as defined in the "General Order 2017-01, Standing Order Concerning Chapter 13 Cases" and as it may be superseded or amended ("General Order").  All provisions of the General Order shall apply to this *Plan* as if fully set out herein.

Page 1

| | | |
|---|---|---|
| Plan Payment:   **Variable** | Value of Non-exempt property per § 1325(a)(4):   **$0.00** | |
| Plan Term:   **36 months** | Monthly Disposable Income per § 1325(b)(2):   **$0.00** | |
| Plan Base:   **$5,150.00** | Monthly Disposable Income x ACP ("UCP"):   **$0.00** | |
| Applicable Commitment Period:   **36 months** | | |

## EXHIBIT "D"

Case No:   17-44426-mxm-13

Debtor(s):   **Kimberly Jesse Volpe**

---

**MOTION FOR VALUATION**

Pursuant to Bankruptcy Rule 3012, for purposes of 11 U.S.C. § 506(a) and § 1325(a)(5) and for purposes of determination of the amounts to be distributed to holders of secured claims who do not accept the *Plan, Debtor(s)* hereby move(s) the Court to value the *Collateral* described in Section I, Part E.(1) and Part F of the *Plan* at the lesser of the value set forth therein or any value claimed on the proof of claim.  Any objection to valuation shall be filed at least seven (7) days prior to the date of the *Trustee's* pre-hearing conference regarding Confirmation or shall be deemed waived.

**SECTION I**
**DEBTOR'S(S') CHAPTER 13 PLAN - SPECIFIC PROVISIONS**
**FORM REVISED 7/1/17**

A. **PLAN PAYMENTS:**

   *Debtor(s)* propose(s) to pay to the *Trustee* the sum of:

   **$380.00**   per month, months   **1**   to   **1**   .

   **$760.00**   per month, months   **2**   to   **2**   .

   **$380.00**   per month, months   **3**   to   **3**   .

   **$110.00**   per month, months   **4**   to   **36**   .

   For a total of   **$5,150.00**   (estimated "*Base Amount*").

   First payment is due   **12/2/2017**   .

   The applicable commitment period ("ACP") is   **36**   months.

   Monthly Disposable Income ("DI") calculated by *Debtor(s)* per § 1325(b)(2) is:   **$0.00**   .

   The Unsecured Creditors' Pool ("UCP"), which is DI x ACP, as estimated by the Debtor(s), shall be no less than:   **$0.00**   .

   *Debtor's(s')* equity in non-exempt property, as estimated by *Debtor(s)* per § 1325(a)(4), shall be no less than:   **$0.00**   .

B. **STATUTORY, ADMINISTRATIVE AND DSO CLAIMS:**

   1. **CLERK'S FILING FEE:**   Total filing fees paid through the *Plan*, if any, are   **$0.00**   and shall be paid in full prior to disbursements to any other creditor.

   2. **STATUTORY TRUSTEE'S PERCENTAGE FEE(S) AND NOTICING FEES:**   *Trustee's Percentage Fee(s)* and any noticing fees shall be paid first out of each receipt as provided in General Order 2017-01 (as it may be superseded or amended) and 28 U.S.C. § 586(e)(1) and (2).

   3. **DOMESTIC SUPPORT OBLIGATIONS:**   The *Debtor* is responsible for paying any Post-petition Domestic Support Obligation directly to the DSO claimant.  Pre-petition Domestic Support Obligations per Schedule "E/F" shall be paid in the following monthly payments:

| DSO CLAIMANTS | SCHED. AMOUNT | % | TERM (APPROXIMATE) (MONTHS __ TO __) | TREATMENT $__ PER MO. |
|---|---|---|---|---|
|  |  |  |  |  |

C. **ATTORNEY FEES:**  To   **Leinart Law Firm**   , total:   **$3,700.00**   ;
   **$0.00**   Pre-petition;   **$3,700.00**   disbursed by the *Trustee*.

**EXHIBIT "D"**

Case No: 17-44426-mxm-13
Debtor(s): **Kimberly Jesse Volpe**

---

#### D.(1) PRE-PETITION MORTGAGE ARREARAGE:

| MORTGAGEE | SCHED. ARR. AMT | DATE ARR. THROUGH | % | TERM (APPROXIMATE) (MONTHS __ TO __) | TREATMENT |
|---|---|---|---|---|---|
| | | | | | |

#### D.(2) CURRENT POST-PETITION MORTGAGE PAYMENTS DISBURSED BY THE TRUSTEE IN A CONDUIT CASE:

| MORTGAGEE | # OF PAYMENTS PAID BY TRUSTEE | CURRENT POST-PETITION MORTGAGE PAYMENT AMOUNT | FIRST CONDUIT PAYMENT DUE DATE (MM-DD-YY) |
|---|---|---|---|
| | | | |

#### D.(3) POST-PETITION MORTGAGE ARREARAGE:

| MORTGAGEE | TOTAL AMT. | DUE DATE(S) (MM-DD-YY) | % | TERM (APPROXIMATE) (MONTHS __ TO __) | TREATMENT |
|---|---|---|---|---|---|
| | | | | | |

#### E.(1) SECURED CREDITORS - PAID BY THE TRUSTEE:

A.

| CREDITOR / COLLATERAL | SCHED. AMT. | VALUE | % | TERM (APPROXIMATE) (MONTHS __ TO __) | TREATMENT Per Mo. |
|---|---|---|---|---|---|
| | | | | | |

B.

| CREDITOR / COLLATERAL | SCHED. AMT. | VALUE | % | | TREATMENT Pro-rata |
|---|---|---|---|---|---|
| | | | | | |

To the extent the value amount in E.(1) is less than the scheduled amount in E.(1), the creditor may object. In the event a creditor objects to the treatment proposed in paragraph E.(1), the *Debtor(s)* retain(s) the right to surrender the *Collateral* to the creditor in satisfaction of the creditor's claim.

#### E.(2) SECURED 1325(a)(9) CLAIMS PAID BY THE TRUSTEE - NO CRAM DOWN:

A.

| CREDITOR / COLLATERAL | SCHED. AMT. | % | TERM (APPROXIMATE) (MONTHS __ TO __) | TREATMENT Per Mo. |
|---|---|---|---|---|
| | | | | |

B.

| CREDITOR / COLLATERAL | SCHED. AMT. | % | | TREATMENT Pro-rata |
|---|---|---|---|---|
| | | | | |

The valuation of *Collateral* set out in E.(1) and the interest rate to be paid on the above scheduled claims in E.(1) and E.(2) will be finally determined at confirmation. The allowed claim amount will be determined based on a timely filed proof of claim and the *Trustee's Recommendation Concerning Claims* ("TRCC") or by an order on an objection to claim.

Absent any objection to the treatment described in E.(1) or E.(2), the creditor(s) listed in E.(1) and E.(2) shall be deemed to have accepted the *Plan* per section 1325(a)(5)(A) of the Bankruptcy Code and to have waived its or their rights under section 1325(a)(5)(B) and (C) of the Bankruptcy Code.

#### F. SECURED CREDITORS - COLLATERAL TO BE SURRENDERED:

| CREDITOR / COLLATERAL | SCHED. AMT. | VALUE | TREATMENT |
|---|---|---|---|
| **Citimortgage Inc** 907 Tulane Dr., Arlington, TX 76012 | $146,842.64 | $232,452.00 | Surrender |
| **Ford Motor Credit** 2014 Ford Escape | $184.69 | $16,150.00 | Surrender |

**EXHIBIT "D"**

Case No:   17-44426-mxm-13

Debtor(s):   **Kimberly Jesse Volpe**

---

Upon confirmation, pursuant to 11 U.S.C. § 1322(b)(8), the surrender of the *Collateral* described herein will provide for the payment of all or part of a claim against the *Debtor(s)* in the amount of the value given herein.

The valuation of *Collateral* in F will be finally determined at confirmation.  The allowed claim amount will be determined based on a timely filed proof of claim and the *Trustee's Recommendation Concerning Claims* ("TRCC") or by an order on an objection to claim.

The *Debtor(s)* request(s) that the automatic stay be terminated as to the surrendered *Collateral*.  If there is no objection to the surrender, the automatic stay shall terminate and the *Trustee* shall cease disbursements on any secured claim which is secured by the *Surrendered Collateral*, without further order of the Court, on the 7th day after the date the *Plan* is filed.  However, the stay shall not be terminated if the *Trustee* or affected secured lender files an objection in compliance with paragraph 8 of the General Order until such objection is resolved.

Nothing in this *Plan* shall be deemed to abrogate any applicable non-bankruptcy statutory or contractual rights of the *Debtor(s)*.

### G.  SECURED CREDITORS - PAID DIRECT BY DEBTOR:

| CREDITOR | COLLATERAL | SCHED. AMT. |
|---|---|---|
| **Tarrant County Tax Assesor/Collector** | **907 Tulane Dr., Arlington, TX 76012** | **$0.00** |

### H.  PRIORITY CREDITORS OTHER THAN DOMESTIC SUPPORT OBLIGATIONS:

| CREDITOR | SCHED. AMT. | TERM (APPROXIMATE) (MONTHS __ TO __) | TREATMENT |
|---|---|---|---|
| | | | |

### I.  SPECIAL CLASS:

| CREDITOR | SCHED. AMT. | TERM (APPROXIMATE) (MONTHS __ TO __) | TREATMENT |
|---|---|---|---|
| | | | |

JUSTIFICATION: _____

---

### J.  UNSECURED CREDITORS:

| CREDITOR | SCHED. AMT. | COMMENT |
|---|---|---|
| **Acceptance Now** | **$5,919.00** | |
| **Acceptance Now** | **$0.00** | |
| **Arlington Emergency Med Assoc.** | **$0.00** | |
| **AT&T** | **$0.00** | |
| **Baylor All Saints** | **$0.00** | |
| **Capital One** | **$1,037.00** | |
| **Capital One** | **$978.00** | |
| **Capital One** | **$933.00** | |
| **CCS** | **$0.00** | |
| **Check N Title** | **$0.00** | |
| **Comenity Bank** | **$835.00** | |
| **Credit One Bank Na** | **$645.00** | |
| **Credit Systems International, Inc** | **$0.00** | |
| **Ford Motor Credit** | **$0.00** | |
| **Gettington.com** | **$351.52** | |
| **Homeq Servicing** | **($1.00)** | |
| **Mohela/Dept of Ed** | **$20,641.00** | |

**EXHIBIT "D"**

Case No: 17-44426-mxm-13
Debtor(s): **Kimberly Jesse Volpe**

| | |
|---|---|
| **Ocwen Loan Servicing, Llc** | **$0.00** |
| **Ocwen Loan Servicing, Llc** | **$0.00** |
| **Panhandle Plains** | **$0.00** |
| **Paypal Credit Inc.** | **$1,014.45** |
| **Quest Diagnostics** | **$0.00** |
| **Regional Fin** | **$1,298.00** |
| **Regional Finance** | **$0.00** |
| **Regional Finance** | **$0.00** |
| **Regional Finance** | **$0.00** |
| **Regional Finance** | **$0.00** |
| **Rooms To Go** | **$0.00** |
| **Saxon Mortgage Service** | **$0.00** |
| **Six Flags Membership** | **$0.00** |
| **Synchrony Bank/Amazon** | **$0.00** |
| **Synchrony Bank/Care Credit** | **$2,571.00** |
| **Synchrony Bank/TJX** | **$132.00** |
| **T-Mobile** | **$0.00** |
| **Texas Health Presbyterian** | **$0.00** |
| **US Dept of Education** | **$0.00** |
| **US Dept of Education** | **$0.00** |
| **Visa Dept Store National Bank/Macy's** | **$0.00** |
| **Webbank/Gettington** | **$394.00** |
| TOTAL SCHEDULED UNSECURED: | **$36,747.97** |

The *Debtor's(s')* estimated (but not guaranteed) payout to unsecured creditors based on the scheduled amount is **2%**.

General unsecured claims will not receive any payment until after the order approving the TRCC becomes final.

**K. EXECUTORY CONTRACTS AND UNEXPIRED LEASES:**

| § 365 PARTY | ASSUME/REJECT | CURE AMOUNT | TERM (APPROXIMATE) (MONTHS __ TO __) | TREATMENT |
|---|---|---|---|---|
| **T-Mobile** | **Assumed** | **$1,587.00** | **Direct Pay** | |

**SECTION II**
**DEBTOR'S(S') CHAPTER 13 PLAN - GENERAL PROVISIONS**
**FORM REVISED 7/1/17**

**A. SUBMISSION OF DISPOSABLE INCOME:**

*Debtor(s)* hereby submit(s) future earnings or other future income to the *Trustee* to pay the *Base Amount*.

**B. ADMINISTRATIVE EXPENSES, DSO CLAIMS & PAYMENT OF TRUSTEE'S STATUTORY PERCENTAGE FEE(S) AND NOTICING FEES:**

The Statutory Percentage Fees of the *Trustee* shall be paid in full pursuant to 11 U.S.C. §§ 105(a), 1326(b)(2), and 28 U.S.C. § 586(e)(1)(B). The *Trustee* is authorized to charge and collect Noticing Fees as indicated in Section I, Part "B" hereof.

**C. ATTORNEY FEES:**

*Debtor's(s')* Attorney Fees totaling the amount indicated in Section I, Part C, shall be disbursed by the *Trustee* in the amount shown as "Disbursed By The Trustee" pursuant to this *Plan* and the *Debtor's(s')* Authorization for Adequate Protection Disbursements ("*AAPD*"), if filed.

**EXHIBIT "D"**

Case No:    17-44426-mxm-13

Debtor(s):    **Kimberly Jesse Volpe**

---

#### D.(1)  PRE-PETITION MORTGAGE ARREARAGE:

The Pre-Petition *Mortgage Arrearage* shall be paid by the *Trustee* in the allowed pre-petition arrearage amount and at the rate of interest indicated in Section I, Part D.(1).  To the extent interest is provided, it will be calculated from the date of the Petition.  The principal balance owing upon confirmation of the *Plan* on the allowed pre-petition *Mortgage Arrearage* amount shall be reduced by the total adequate protection less any interest (if applicable) paid to the creditor by the *Trustee*.  Such creditors shall retain their liens.

#### D.(2)  CURRENT POST-PETITION MORTGAGE PAYMENTS DISBURSED BY TRUSTEE IN A CONDUIT CASE:

*Current Post-Petition Mortgage Payment(s)* shall be paid by the *Trustee* as indicated in Section I, Part D.(2), or as otherwise provided in the General Order.

The *Current Post-Petition Mortgage Payment(s)* indicated in Section I, Part D.(2) reflects what the *Debtor(s)* believe(s) is/are the periodic payment amounts owed to the *Mortgage Lender* as of the date of the filing of this *Plan*.  Adjustment of the *Plan Payment* and *Base Amount* shall be calculated as set out in the General Order, paragraph 15(c)(3).

Payments received by the *Trustee* for payment of the *Debtor's Current Post-Petition Mortgage Payment(s)* shall be deemed adequate protection to the creditor.

Upon completion of the *Plan, Debtor(s)* shall resume making the *Current Post-Petition Mortgage Payments* required by their contract on the due date following the date specified in the *Trustee's* records as the date through which the *Trustee* made the last *Current Post-Petition Mortgage Payment*.

Unless otherwise ordered by the Court, and subject to Bankruptcy Rule 3002.1(f)-(h), if a *Conduit Debtor* is current on his/her *Plan Payments* or the payment(s) due pursuant to any wage directive, the *Mortgage Lender* shall be deemed current post-petition.

#### D.(3)  POST-PETITION MORTGAGE ARREARAGE:

The *Post-Petition Mortgage Arrearage* shall be paid by the *Trustee* in the allowed amount and at the rate of interest indicated in Section I, Part D.(3).  To the extent interest is provided, it will be calculated from the date of the Petition.

*Mortgage Lenders* shall retain their liens.

#### E.(1)  SECURED CLAIMS TO BE PAID BY TRUSTEE:

The claims listed in Section I, Part E.(1) shall be paid by the *Trustee* as secured to the extent of the lesser of the allowed claim amount (per a timely filed Proof of Claim not objected to by a party in interest) or the value of the *Collateral* as stated in the *Plan*.  Any amount claimed in excess of the value shall automatically be split and treated as unsecured as indicated in Section I, Part H or J, per 11 U.S.C. § 506(a).  Such creditors shall retain their liens on the *Collateral* described in Section I, Part E.(1) as set out in 11 U.S.C. § 1325(a)(5)(B)(I) and shall receive interest at the rate indicated from the date of confirmation or, if the value shown is greater than the allowed claim amount, from the date of the Petition, up to the amount by which the claim is over-secured.  The principal balance owing upon confirmation of the *Plan* on the allowed secured claim shall be reduced by the total of adequate protection payments less any interest (if applicable) paid to the creditor by the *Trustee*.

#### E.(2)  SECURED 1325(a)(9) CLAIMS TO BE PAID BY THE TRUSTEE--NO CRAM DOWN:

Claims in Section I, Part E.(2) are either debts incurred within 910 days of the *Petition Date* secured by a purchase money security interest in a motor vehicle acquired for the personal use of the *Debtor(s)* or debts incurred within one year of the *Petition Date* secured by any other thing of value.

The claims listed in Section I, Part E.(2) shall be paid by the *Trustee* as fully secured to the extent of the allowed amount (per a timely filed Proof of Claim not objected to by a party in interest).  Such creditors shall retain their liens on the *Collateral* described in Section I, Part E.(2) until the earlier of the payment of the underlying debt determined under non-bankruptcy law or a discharge under § 1328 and shall receive interest at the rate indicated from the date of confirmation.  The principal balance owing upon confirmation of the *Plan* on the allowed secured claim shall be reduced by the total of adequate protection payments paid to the creditor by the *Trustee*.

To the extent a secured claim not provided for in Section I, Part D, E.(1) or E.(2) is allowed by the Court, *Debtor(s)* will pay the claim direct per the contract or statute.

Each secured claim shall constitute a separate class.

**EXHIBIT "D"**

Case No: 17-44426-mxm-13
Debtor(s): **Kimberly Jesse Volpe**

---

**F. SATISFACTION OF CLAIM BY SURRENDER OF COLLATERAL:**

The claims listed in Section I, Part F shall be satisfied as secured to the extent of the value of the *Collateral*, as stated in the *Plan*, by surrender of the *Collateral* by the *Debtor(s)* on or before confirmation. Any amount claimed in excess of the value of the *Collateral*, to the extent it is allowed, shall be automatically split and treated as indicated in Section I, Part H or J, per 11 U.S.C. § 506(a).

Each secured claim shall constitute a separate class.

**G. DIRECT PAYMENTS BY DEBTOR(S):**

Payments on all secured claims listed in Section I, Part G shall be disbursed by the *Debtor(s)* to the claimant in accordance with the terms of their agreement or any applicable statute, unless otherwise provided in Section III, "Nonstandard Provisions."

No direct payment to the IRS from future income or earnings in accordance with 11 U.S.C. § 1322(a)(1) will be permitted.

Each secured claim shall constitute a separate class.

**H. PRIORITY CLAIMS OTHER THAN DOMESTIC SUPPORT OBLIGATIONS:**

Failure to object to confirmation of this *Plan* shall not be deemed acceptance of the "SCHED. AMT." shown in Section I, Part H. The claims listed in Section I, Part H shall be paid their allowed amount by the *Trustee*, in full, pro-rata, as priority claims, without interest.

**I. CLASSIFIED UNSECURED CLAIMS:**

Classified unsecured claims shall be treated as allowed by the Court.

**J. GENERAL UNSECURED CLAIMS TIMELY FILED:**

All other allowed claims not otherwise provided for herein shall be designated general unsecured claims.

**K. EXECUTORY CONTRACTS AND UNEXPIRED LEASES:**

As provided in § 1322(b)(7) of the Bankruptcy Code, the *Debtor(s)* assume(s) or reject(s) the executory contracts or unexpired leases with parties as indicated in Section I, Part K.

Assumed lease and executory contract arrearage amounts shall be disbursed by the *Trustee* as indicated in Section I, Part K.

**L. CLAIMS TO BE PAID:**

"TERM (APPROXIMATE)" as used in this *Plan* states the estimated number of months from the *Petition Date* required to fully pay the allowed claim. If adequate protection payments have been authorized and made, they will be applied to principal as to both under-secured and fully secured claims and allocated between interest and principal as to over-secured claims. Payment pursuant to this *Plan* will only be made on statutory, secured, administrative, priority and unsecured claims that are allowed or, pre-confirmation, that the *Debtor(s)* has/have authorized in a filed Authorization for Adequate Protection Disbursements.

**M. ADDITIONAL PLAN PROVISIONS:**

Any additional *Plan* provisions shall be set out in Section III, "Nonstandard Provisions."

**N. POST-PETITION NON-ESCROWED AD VALOREM (PROPERTY) TAXES AND INSURANCE:**

Whether the *Debtor* is a *Conduit Debtor* or not, if the regular payment made by the *Debtor* to a *Mortgage Lender* or any other lienholder secured by real property does not include an escrow for the payment of ad valorem (property) taxes or insurance, the *Debtor* is responsible for the timely payment of post-petition taxes directly to the tax assessor and is responsible for maintaining property insurance as required by the mortgage security agreement, paying all premiums as they become due directly to the insurer. If the *Debtor* fails to make these payments, the mortgage holder may, but is not required to, pay the taxes and/or the insurance. If the mortgage holder pays the taxes and/or insurance, the mortgage holder may file, as appropriate, a motion for reimbursement of the amount paid as an administrative claim or a *Notice of Payment Change by Mortgage Lender* or a *Notice of Fees, Expenses, and Charges*.

**O. CLAIMS NOT FILED:**

A claim not filed with the Court will not be paid by the *Trustee* post-confirmation regardless of its treatment in Section I or on the *AAPD*.

**EXHIBIT "D"**

Case No:     17-44426-mxm-13

Debtor(s):   **Kimberly Jesse Volpe**

---

**P.   CLAIMS FOR PRE-PETITION NON-PECUNIARY PENALTIES, FINES, FORFEITURES, MULTIPLE, EXEMPLARY OR PUNITIVE DAMAGES:**

Any unsecured claim for a non-pecuniary penalty, fine, or forfeiture, or for multiple, exemplary or punitive damages, expressly including an IRS penalty to the date of the petition on unsecured and/or priority claims, shall be paid only a pro-rata share of any funds remaining after all other unsecured claims, including late filed claims, have been paid in full.

**Q.   CLAIMS FOR POST-PETITION PENALTIES AND INTEREST:**

No interest, penalty, or additional charge shall be allowed on any pre-petition claims subsequent to the filing of the petition, unless expressly provided herein.

**R.   BUSINESS CASE OPERATING REPORTS:**

Upon the filing of the *Trustee's* 11 U.S.C. § 1302(c) Business Case Report, business *Debtors* are no longer required to file operating reports with the *Trustee*, unless the *Trustee* requests otherwise.  The filing of the *Trustee's* 11 U.S.C. § 1302(c) Business Case Report shall terminate the *Trustee's* duties but not the *Trustee's* right to investigate or monitor the *Debtor's(s')* business affairs, assets or liabilities.

**S.   NO TRUSTEE'S LIABILITY FOR DEBTOR'S POST-CONFIRMATION OPERATION AND BAR DATE FOR CLAIMS FOR PRE-CONFIRMATION OPERATIONS:**

The *Trustee* shall not be liable for any claim arising from the post-confirmation operation of the *Debtor's(s')* business.  Any claims against the *Trustee* arising from the pre-confirmation operation of the *Debtor's(s')* business must be filed with the Bankruptcy Court within sixty (60) days after entry by the Bankruptcy Court of the Order of Confirmation or be barred.

**T.   DISPOSAL OF DEBTOR'S NON-EXEMPT PROPERTY; RE-VESTING OF PROPERTY; NON-LIABILITY OF TRUSTEE FOR PROPERTY IN POSSESSION OF DEBTOR WHERE DEBTOR HAS EXCLUSIVE RIGHT TO USE, SELL, OR LEASE IT; AND TRUSTEE PAYMENTS UPON POST CONFIRMATION CONVERSION OR DISMISSAL:**

*Debtor(s)* shall not dispose of or encumber any non-exempt property or release or settle any lawsuit or claim by *Debtor(s)*, prior to discharge, without consent of the *Trustee* or order of the Court after notice to the *Trustee* and all creditors.

Property of the estate shall not vest in the *Debtor* until such time as a discharge is granted or the *Case* is dismissed or closed without discharge.  Vesting shall be subject to all liens and encumbrances in existence when the *Case* was filed and all valid post-petition liens, except those liens avoided by court order or extinguished by operation of law.  In the event the *Case* is converted to a case under chapter 7, 11, or 12 of the Bankruptcy Code, the property of the estate shall vest in accordance with applicable law.  After confirmation of the *Plan*, the *Trustee* shall have no further authority, fiduciary duty or liability regarding the use, sale, insurance of or refinance of property of the estate except to respond to any motion for the proposed use, sale, or refinance of such property as required by the applicable laws and/or rules.  Prior to any discharge or dismissal, the *Debtor(s)* must seek approval of the court to purchase, sell, or refinance real property.

Upon dismissal of the *Case* post confirmation, the *Trustee* shall disburse all funds on hand in accordance with this *Plan*.  Upon conversion of the *Case*, any balance on hand will be disbursed by the *Trustee* in accordance with applicable law.

**U.   ORDER OF PAYMENT:**

Unless otherwise ordered by the court, all claims and other disbursements made by the Chapter 13 *Trustee* after the entry of an order confirming the Chapter 13 Plan, whether pursuant to this *Plan* or a modification thereof, will be paid in the order set out below, to the extent a creditor's claim is allowed or the disbursement is otherwise authorized.  Each numbered paragraph below is a level of payment.  All disbursements which are in a specified monthly amount are referred to as "per mo."  At the time of any disbursement, if there are insufficient funds on hand to pay any per mo payment in full, claimant(s) with a higher level of payment shall be paid any unpaid balance owed on a per mo payment plus the current per mo payment owed to that same claimant, in full, before any disbursement to a claimant with a lower level of payment.  If multiple claimants are scheduled to receive per mo payments within the same level of payment and there are insufficient funds to make those payments in full, available funds will be disbursed to the claimants within that level on a pro-rata basis.  Claimants with a higher level of payment which are designated as receiving pro-rata payments shall be paid, in full, before any disbursements are made to any claimant with a lower level of payment.

**EXHIBIT "D"**

Case No:   17-44426-mxm-13

Debtor(s):   **Kimberly Jesse Volpe**

---

1st -- Clerk's Filing Fee and Trustee's Percentage Fee(s) and Noticing Fees in B.(1) and B.(2) and per statutory provisions will be paid in full.

2nd -- Current Post-Petition Mortgage Payments (Conduit) in D.(2) and as adjusted according to the General Order, which must be designated to be paid per mo.

3rd -- Creditors listed in E.(1)(A) and E.(2)(A), which must be designated to be paid per mo, and Domestic Support Obligations ("DSO") in B.(3), which must be designated to be paid per mo.

4th -- Attorney Fees in C, which must be designated to be paid pro-rata.

5th -- Post-Petition Mortgage Arrearage as set out in D.(3), if designated to be paid per mo.

6th -- Post-Petition Mortgage Arrearage as set out in D.(3), if designated to be paid pro-rata.

7th -- Arrearages owed on Executory Contracts and Unexpired Leases in K, which must be designated to be paid per mo.

8th -- Any Creditors listed in D.(1), if designated to be paid per mo.

9th -- Any Creditors listed in D.(1), if designated to be paid pro-rata and/or Creditors listed in E.(1)(B) or E.(2)(B), which must be designated to be paid pro-rata.

10th -- All amounts allowed pursuant to a *Notice of Fees, Expenses and Charges*, which will be paid pro-rata.

11th -- Priority Creditors Other than Domestic Support Obligations ("Priority Creditors") in H, which must be designated to be paid pro-rata.

12th -- Special Class in I, which must be designated to be paid per mo.

13th -- Unsecured Creditors in J, other than late filed or penalty claims, which must be designated to be paid pro-rata.

14th -- Late filed claims by Secured Creditors in D.(1), D.(2), D.(3), E.(1) and E.(2), which must be designated to be paid pro-rata, unless other treatment is authorized by the Court.

15th -- Late filed claims for DSO or filed by Priority Creditors in B.(3) and H, which must be designated to be paid pro-rata.

16th -- Late filed claims by Unsecured Creditors in J, which must be designated to be paid pro-rata.

17th -- Unsecured claims for a non-pecuniary penalty, fine, or forfeiture, or for multiple, exemplary or punitive damages, expressly including an IRS penalty to the date of the petition on unsecured and/or priority claims. These claims must be designated to be paid pro-rata.

### V.   POST-PETITION CLAIMS:

Claims filed under § 1305 of the Bankruptcy Code shall be paid as allowed. To the extent necessary, *Debtor(s)* will modify this *Plan*.

### W.   TRUSTEE'S RECOMMENDATION CONCERNING CLAIMS ("TRCC") PROCEDURE:

See the provisions of the General Order regarding this procedure.

**EXHIBIT "D"**

Case No:    17-44426-mxm-13

Debtor(s):  **Kimberly Jesse Volpe**

---

## SECTION III
## NONSTANDARD PROVISIONS

The following nonstandard provisions, if any, constitute terms of this *Plan*.  Any nonstandard provision placed elsewhere in the *Plan* is void.

**None.**

I, the undersigned, hereby certify that the *Plan* contains no nonstandard provisions other than those set out in this final paragraph.

**/s/ Marcus Leinart**
_____
Marcus Leinart, Debtor's(s') Attorney

_____
Debtor (if unrepresented by an attorney)

Debtor's(s') Chapter 13 Plan (Containing a Motion for Valuation) is respectfully submitted.

**/s/ Marcus Leinart**
_____
Marcus Leinart, Debtor's(s') Counsel

**00794156**
_____
State Bar Number

**EXHIBIT "D"**

Case No:  17-44426-mxm-13
Debtor(s):  **Kimberly Jesse Volpe**

---

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that the foregoing Debtor's(s') Chapter 13 Plan (Containing a Motion for Valuation) was served on the following entities either by Electronic Service or by First Class Mail, Postage Pre-paid on the __**28th day of February, 2018**__ :

(List each party served, specifying the name and address of each party)

Dated: _____**February 28, 2018**_____          **/s/ Marcus Leinart**
                                                                                          Marcus Leinart, Debtor's(s') Counsel

| | | |
|---|---|---|
| Acceptance Now<br>xxxxxxxxxxxxxxxxxx4575<br>Attn: Bankruptcy<br>5501 Headquarters Dr<br>Plano, TX 75024 | Capital One<br>xxxxxxxxxxxx4394<br>Attn: Bankruptcy<br>PO Box 30253<br>Salt Lake City, UT 84130 | Credit One Bank Na<br>xxxxxxxxxxxx1628<br>PO Box 98873<br>Las Vegas, NV 89193 |
| Acceptance Now<br>5501 Headquarters Dr<br>Plano, TX 75024 | Capital One<br>xxxxxxxxxxxx2063<br>Attn: Bankruptcy<br>PO Box 30253<br>Salt Lake City, UT 84130 | Credit Systems International, Inc<br>xxxxx4730<br>1277 Country Club Lane<br>Fort Worth, TX 76112 |
| Arlington Emergency Med Assoc.<br>PO Box 960260<br>Oklahoma City, OK 73196- | CCS<br>Payment Processing Center<br>P.O. Box 55126<br>Boston, MA 02205 | Ford Motor Credit<br>xxxx7864<br>National Bankruptcy Service Center<br>PO Box 62180<br>Colorado Springs, CO 80962 |
| AT&T<br>PO Box 90245<br>Arlington, TX 76004 | Check N Title<br>3906 Camp Wisdom<br>Dallas, TX 75237 | Ford Motor Credit<br>xxxx7375<br>National Bankruptcy Service Center<br>PO Box 62180<br>Colorado Springs, CO 80962 |
| Baylor All Saints<br>P.O. Box 460036<br>Garland, TX 75046 | Citimortgage Inc<br>xxxxx9980<br>Attn: Bankruptcy<br>PO Box 6423<br>Sioux Falls, SD 57117 | Gettington.com<br>PO Box 166<br>Newark, NJ 07101 |
| Capital One<br>xxxxxxxxxxxx2334<br>Attn: Bankruptcy<br>PO Box 30253<br>Salt Lake City, UT 84130 | Comenity Bank<br>xxxxxxxxxxxx2233<br>Attn: Bankruptcy<br>PO Box 182125<br>Columbus, OH 43218 | Homeq Servicing<br>xxxxxxxxx2571<br>Po Box 13716<br>Sacramento, CA 95853 |

**EXHIBIT "D"**

Case No:    17-44426-mxm-13

Debtor(s):    **Kimberly Jesse Volpe**

---

Kimberly Jesse Volpe

[REDACTED]

Mohela/Dept of Ed
xxxxxxxxxxxx0001
633 Spirit Dr
Chesterfield, MO 63005


Ocwen Loan Servicing, Llc
xxxx6708
Attn: Research/Bankruptcy
1661 Worthington Rd Ste 100
West Palm Bch, FL 33409


Ocwen Loan Servicing, Llc
xxxxx7331
Attn: Research/Bankruptcy
1661 Worthington Rd Ste 100
West Palm Bch, FL 33409


Pam Bassel
7001 Blvd 26, Suite 150
North Richland Hills, TX 76180


Panhandle Plains
x9999
PO Box 839
Canyon, TX 79015


Paypal Credit Inc.
xxxxxxxxxxxx1311
Attn: Bankruptcy Dept
PO Box 5138
Lutherville, MD 21094


Quest Diagnostics
500 Plaza Drive
Secaucus, NJ 07094


Regional Fin
xxxxxxx0901
230 W. Parker Rd.
Plano, TX 75075


Regional Finance
xxxxxxx1801
1518 Pennsylvania Avenue
Fort Worth, TX 76104


Regional Finance
xxxxxxx5901
3917 W Camp Wisdom Rd.
Dallas, TX 75237


Regional Finance
xxxxxxx7901
PO Box 776
Mauldin, SC 29662


Regional Finance
xxxxxxx0101
3465 W. Walnut St. ste. 107
Garland, TX 75042


Rooms To Go
P O Box 703
Wooddale, IL  60181


Saxon Mortgage Service
xxxxxx4655
Po Box 161489
Fort Worth, TX 76161


Six Flags Membership
2201 Road To Six Flags
Arlington, TX 76010


Synchrony Bank/Amazon
xxxxxxxxxxxx0710
Attn: Bankruptcy
PO Box 965060
Orlando, FL 32896


Synchrony Bank/Care Credit
xxxxxxxxxxxx4505
Attn: Bankruptcy
PO Box 965060
Orlando, FL 32896


Synchrony Bank/TJX
xxxxxxxxxxxx9867
Attn: Bankruptcy
PO Box 965060
Orlando, FL 32896


T-Mobile
Attn: Bankruptcy
PO Box 53410
Bellevue, WA 98015


Tarrant County Tax Assesor/Collector
xxxx7874
Ron Wright, CTA
PO Box 961018
Fort Worth, TX 76161-0018


Texas Health Presbyterian
P.O. Box 460036
Garland, TX 75046


Transformance
xxxx188-5
8737 King George Dr.
Dallas, TX 75235


US Dept of Education
xxxxxxxxxxxx9686
Attn: Bankruptcy
PO Box 16448
Saint Paul, MN 55116

**EXHIBIT "D"**

Case No:    17-44426-mxm-13

Debtor(s):  **Kimberly Jesse Volpe**

US Dept of Education
xxxxx0821
Attn: Bankruptcy
PO Box 16448
Saint Paul, MN 55116


Visa Dept Store National Bank/Macy's
xxxxxxxx4790
Attn: Bankruptcy
PO Box 8053
Mason, OH 45040


Webbank/Gettington
xxxxxxxxxxxx9270
215 S State St
Ste 1000
Salt Lake City, UT 84111

**EXHIBIT "D"**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

IN RE:  **Kimberly Jesse Volpe** _____        CASE NO.  **17-44426-mxm-13**

_Debtor_

_____        CHAPTER  **13**

_Joint Debtor_

## CERTIFICATE OF SERVICE

_____

    I, the undersigned, hereby certify that on February 28, 2018, a copy of the attached Chapter 13 Plan, with any attachments, was served on each party in interest listed below, by placing each copy in an envelope properly addressed, postage fully prepaid in compliance with Local Rule 9013 (g).

**/s/ Marcus Leinart** _____
Marcus Leinart
Bar ID:00794156
Leinart Law Firm
11520 N. Central Expressway
Suite 212
Dallas, Texas 75243
(469) 232-3328

_____

| | | |
|---|---|---|
| Acceptance Now<br>xxxxxxxxxxxxxxxxxxxx4575<br>Attn: Bankruptcy<br>5501 Headquarters Dr<br>Plano, TX 75024 | Attorney General of Texas<br>Collections Div/ Bankruptcy Sec<br>PO Box 12548<br>Austin, TX 78711-2548 | Capital One<br>xxxxxxxxxxxx2063<br>Attn: Bankruptcy<br>PO Box 30253<br>Salt Lake City, UT 84130 |
| Acceptance Now<br>5501 Headquarters Dr<br>Plano, TX 75024 | Baylor All Saints<br>P.O. Box 460036<br>Garland, TX 75046 | CCS<br>Payment Processing Center<br>P.O. Box 55126<br>Boston, MA 02205 |
| Arlington Emergency Med Assoc.<br>PO Box 960260<br>Oklahoma City, OK 73196- | Capital One<br>xxxxxxxxxxxx2334<br>Attn: Bankruptcy<br>PO Box 30253<br>Salt Lake City, UT 84130 | Check N Title<br>3906 Camp Wisdom<br>Dallas, TX 75237 |
| AT&T<br>PO Box 90245<br>Arlington, TX 76004 | Capital One<br>xxxxxxxxxxxx4394<br>Attn: Bankruptcy<br>PO Box 30253<br>Salt Lake City, UT 84130 | Citimortgage Inc<br>xxxxxx9980<br>Attn: Bankruptcy<br>PO Box 6423<br>Sioux Falls, SD 57117 |

**EXHIBIT "D"**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

IN RE:  **Kimberly Jesse Volpe** _____

_____
*Debtor*

CASE NO.   **17-44426-mxm-13**

_____
*Joint Debtor*

CHAPTER   **13**

**CERTIFICATE OF SERVICE**
(Continuation Sheet #1)

Comenity Bank
xxxxxxxxxxxx2233
Attn: Bankruptcy
PO Box 182125
Columbus, OH 43218

Homeq Servicing
xxxxxxxxx2571
Po Box 13716
Sacramento, CA 95853

Pam Bassel
7001 Blvd 26, Suite 150
North Richland Hills, TX 76180

Comptroller of Public Accounts
Revenue Accounting/ Bankruptcy Div
PO Box 13528
Austin,TX 78711

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346

Panhandle Plains
x9999
PO Box 839
Canyon, TX 79015

Credit One Bank Na
xxxxxxxxxxxx1628
PO Box 98873
Las Vegas, NV 89193

Kimberly Jesse Volpe

Paypal Credit Inc.
xxxxxxxxxxxx1311
Attn: Bankruptcy Dept
PO Box 5138
Lutherville, MD 21094

Credit Systems International, Inc
xxxxx4730
1277 Country Club Lane
Fort Worth, TX 76112

Linebarger Goggan Blair et al
2777 N Stemmons Frwy. Ste. 1000
Dallas, TX 75207

Quest Diagnostics
500 Plaza Drive
Secaucus, NJ 07094

Ford Motor Credit
xxxx7864
National Bankruptcy Service Center
PO Box 62180
Colorado Springs, CO 80962

Mohela/Dept of Ed
xxxxxxxxxxxx0001
633 Spirit Dr
Chesterfield, MO 63005

Regional Fin
xxxxxx0901
230 W. Parker Rd.
Plano, TX 75075

Ford Motor Credit
xxxx7375
National Bankruptcy Service Center
PO Box 62180
Colorado Springs, CO 80962

Ocwen Loan Servicing, Llc
xxxx6708
Attn: Research/Bankruptcy
1661 Worthington Rd Ste 100
West Palm Bch, FL 33409

Regional Finance
xxxxxxx1801
1518 Pennsylvania Avenue
Fort Worth, TX 76104

Gettington.com
PO Box 166
Newark, NJ 07101

Ocwen Loan Servicing, Llc
xxxxx7331
Attn: Research/Bankruptcy
1661 Worthington Rd Ste 100
West Palm Bch, FL 33409

Regional Finance
xxxxxxx5901
3917 W Camp Wisdom Rd.
Dallas, TX 75237

**EXHIBIT "D"**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

IN RE: **Kimberly Jesse Volpe**            CASE NO.   **17-44426-mxm-13**
_____
*Debtor*

_____       CHAPTER   **13**
*Joint Debtor*

**CERTIFICATE OF SERVICE**
(Continuation Sheet #2)

| | | |
|---|---|---|
| Regional Finance<br>xxxxxxx7901<br>PO Box 776<br>Mauldin, SC 29662 | Synchrony Bank/TJX<br>xxxxxxxxxxxx9867<br>Attn: Bankruptcy<br>PO Box 965060<br>Orlando, FL 32896 | United States Attorney<br>3rd Floor, 1100 Commerce St<br>Dallas, TX 75242 |
| Regional Finance<br>xxxxxxx0101<br>3465 W. Walnut St. ste. 107<br>Garland, TX 75042 | T-Mobile<br>Attn: Bankruptcy<br>PO Box 53410<br>Bellevue, WA 98015 | United States Trustee<br>1100 Commerce St, Rm 9C60<br>Dallas, TX 75242 |
| Rooms To Go<br>P O Box 703<br>Wooddale, IL 60181 | Tarrant County Tax Assesor/Collector<br>xxxx7874<br>Ron Wright, CTA<br>PO Box 961018<br>Fort Worth, TX 76161-0018 | United States Trustee- Northern District<br>1100 Commerce St, Rm 976<br>Dallas, TX 75242 |
| Saxon Mortgage Service<br>xxxxxx4655<br>Po Box 161489<br>Fort Worth, TX 76161 | Texas Alcoholic Beverage Commission<br>Licenses and Permit Division<br>PO Box 13127<br>Austin,TX 78711-3127 | US Dept of Education<br>xxxxxxxxxxx9686<br>Attn: Bankruptcy<br>PO Box 16448<br>Saint Paul, MN 55116 |
| Six Flags Membership<br>2201 Road To Six Flags<br>Arlington, TX 76010 | Texas Health Presbyterian<br>P.O. Box 460036<br>Garland, TX 75046 | US Dept of Education<br>xxxxx0821<br>Attn: Bankruptcy<br>PO Box 16448<br>Saint Paul, MN 55116 |
| Synchrony Bank/Amazon<br>xxxxxxxxxxx0710<br>Attn: Bankruptcy<br>PO Box 965060<br>Orlando, FL 32896 | Texas Workforce Commission<br>TEC Building- Bankruptcy<br>101 E 15th St<br>Austin, TX 78778 | Visa Dept Store National Bank/Macy's<br>xxxxxxxx4790<br>Attn: Bankruptcy<br>PO Box 8053<br>Mason, OH 45040 |
| Synchrony Bank/Care Credit<br>xxxxxxxxxxx4505<br>Attn: Bankruptcy<br>PO Box 965060<br>Orlando, FL 32896 | Transformance<br>xxxx188-5<br>8737 King George Dr.<br>Dallas, TX 75235 | Webbank/Gettington<br>xxxxxxxxxxx9270<br>215 S State St<br>Ste 1000<br>Salt Lake City, UT 84111 |

**EXHIBIT "D"**



## Personal Credit Report for Kimberly Volpe

**Report Date:** 03/22/2021
**Source:** TransUnion

**File Number:** ▮▮▮▮▮▮▮

### Personal Information

You have been on our files since 09/01/1987

**SSN:** XXX-XX▮▮▮▮
Your SSN has been masked for your protection.

**Date of Birth:** ▮▮▮▮▮▮

**Names Reported:** KIM LACKEY, KIM VOLPE, KIMBERLY JESSE VOLPE and KIMBERLY VOLPE

**Addresses Reported:**

| Address | Date Reported |
|---|---|
|  | |

**Telephone Numbers Reported:**

**Employment Data Reported:**

### Public Records

This section includes public record items from local, state and federal courts and other public record sources that TransUnion may have obtained itself or through a third party vendor. In order to learn the identity of the third-party vendor (if any) that collected the public record item(s) in this section, please visit https://www.transunion.com/legal/public-records Discharged Chapter 13 bankruptcy remains on your file for up to 7 years.

#### USBK COURT NORTHERN TEXAS DOCKET# 1744426

501 W 10TH
RM 147
FORT WORTH, TX 76102
(817) 333-6000

| | | | | |
|---|---|---|---|---|
| **Date Filed:** 11/02/2017 | **Type:** | CHAPTER 13 BANKRUPTCY DISCHARGED | **Court Type:** | US Bankruptcy Court |
| **Date Paid:** 12/03/2020 | | | **Plaintiff Attorney:** | MARCUS B LEINART |
| **Date Updated:** 12/04/2020 | **Responsibility:** | Individual Debt | | |

**Estimated month and year that this item will be removed:** 10/2024

### Account Information

Typically, creditors report any changes made to your account information monthly. This means that some accounts listed below may not reflect the most recent activity until the creditor's next reporting. This information may include things such as balances, payments, dates, remarks, ratings, etc. The key(s) below are provided to help you understand some of the account information that could be reported.

**Rating Key**
Some creditors report the timeliness of your payments each month in relation to your agreement with them. The ratings in the key below describe the payments that may be reported by your creditors. Please note: Some but not all of these ratings may be present in your credit report.

| N/R | X | OK | 30 | 60 | 90 | 120 | COL | VS | RPO | C/O | FC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Not Reported | Unknown | Current | 30 days late | 60 days late | 90 days late | 120+ days late | Collection | Voluntary Surrender | Repossession | Charge Off | Foreclosure |

### Adverse Accounts

Adverse information typically remains on your credit file for up to 7 years from the date of the delinquency. To help you understand what is generally considered adverse, we have added >brackets< to those items in this report. For your protection, your account numbers have been partially masked, and in some cases scrambled. Please note: Accounts are reported as "Current; Paid or paying as agreed" if paid within 30 days of the due date. Accounts reported as Current may still incur late fees or interest charges if not paid on or before the due date.



**EXHIBIT "E"**

  


## CITIMORTGAGE INC #112274****

5800 South Corporate Place
SIOUX FALLS, SD 57108
(800) 283-7918

| | | | | | |
|---|---|---|---|---|---|
| **Date Opened:** | 10/06/2011 | **Balance:** | | **Pay Status:** | >Account Included in |
| **Responsibility:** | Individual Account | **Date Updated:** | 02/04/2019 | | Bankruptcy< |
| **Account Type:** | Mortgage Account | **Last Payment Made:** | 01/04/2019 | **Date Closed:** | 02/04/2019 |
| **Loan Type:** | FHA REAL ESTATE MORTGAGE | **High Balance:** | $169,811 | | |

**Remarks:** CHAPTER 13 BANKRUPTCY; Account information disputed by consumer (FCRA); TRANSFERRED TO ANOTHER LENDER; TRANSFERRED TO ANOTHER OFFICE
**Estimated month and year that this item will be removed:** 06/2019

## EXHIBIT "E"

|  | 01/2019 | 12/2018 | 11/2018 | 10/2018 | 09/2018 | 08/2018 | 07/2018 | 06/2018 | 05/2018 | 04/2018 |
|---|---|---|---|---|---|---|---|---|---|---|
| Rating | N/R | X | X | X | X | X | X | X | X | X |

|  | 03/2018 | 02/2018 | 01/2018 | 12/2017 | 11/2017 | 10/2017 | 09/2017 | 08/2017 | 07/2017 | 06/2017 |
|---|---|---|---|---|---|---|---|---|---|---|
| Rating | X | X | X | X | X | OK | OK | X | X | X |

|  | 05/2017 | 04/2017 | 03/2017 | 02/2017 | 01/2017 | 12/2016 | 11/2016 | 10/2016 | 09/2016 | 08/2016 |
|---|---|---|---|---|---|---|---|---|---|---|
| Rating | X | X | X | X | X | X | X | X | X | X |

|  | 07/2016 | 06/2016 | 05/2016 | 04/2016 | 03/2016 | 02/2016 | 01/2016 | 12/2015 | 11/2015 | 10/2015 |
|---|---|---|---|---|---|---|---|---|---|---|
| Rating | X | X | X | OK | OK | OK | OK | OK | OK | OK |

|  | 09/2015 | 08/2015 | 07/2015 | 06/2015 | 05/2015 | 04/2015 | 03/2015 | 02/2015 | 01/2015 | 12/2014 |
|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

|  | 11/2014 | 10/2014 | 09/2014 | 08/2014 | 07/2014 | 06/2014 | 05/2014 | 04/2014 | 03/2014 | 02/2014 |
|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

|  | 01/2014 | 12/2013 | 11/2013 | 10/2013 | 09/2013 | 08/2013 | 07/2013 | 06/2013 | 05/2013 | 04/2013 |
|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

|  | 03/2013 | 02/2013 | 01/2013 | 12/2012 | 11/2012 | 10/2012 | 09/2012 | 08/2012 | 07/2012 | 06/2012 |
|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

|  | 05/2012 | 04/2012 |
|---|---|---|
| Rating | OK | OK |



**EXHIBIT "E"**



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 3, 2020**

*Mark X. Mullin*

**United States Bankruptcy Judge**

---

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

IN RE:                                                      **CASE NO.: 17-44426-MXM-13**

      **KIMBERLY JESSE VOLPE**
         AKA: LACKEY

        SSN/TIN: XXX-XX-

**DEBTOR**

### ORDER OF DISCHARGE

    CAME ON for consideration Debtor's Certification and Motion for Entry of Chapter 13 Discharge.  The Court is of the opinion that the Motion should be GRANTED.

    IT IS THEREFORE ORDERED that a discharge under 11 U.S.C. §1328(a) is GRANTED to:

      **KIMBERLY JESSE VOLPE**
         AKA: LACKEY

        SSN/TIN: XXX-XX-

### # # # END OF ORDER # # #

**EXHIBIT "F"**

### EXPLANATION OF BANKRUPTCY DISCHARGE IN A CHAPTER 13 CASE

This order does not close or dismiss the case.

### CREDITORS CANNOT COLLECT DISCHARGED DEBTS

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors' damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

This order does not prevent debtors from paying any debt voluntarily. 11 U.S.C. § 524(f).

### MOST DEBTS ARE DISCHARGED

Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts provided for by the chapter 13 plan.

In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.

### SOME DEBTS ARE NOT DISCHARGED

Examples of debts that are not discharged are:
- debts that are domestic support obligations;
- debts for most student loans;
- debts for certain types of taxes specified in 11 U.S.C. §§ 507(a)(8)(C), 523(a)(1)(B), or 523(a)(1)(C) to the extent not paid in full under the plan;
- debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case;
- debts for restitution, or a criminal fine, included in a sentence on debtor's criminal conviction;
- some debts which the debtors did not properly list;
- debts provided for under 11 U.S.C. § 1322(b)(5) and on which the last payment or other transfer is due after the date on which the final payment under the plan was due;
- debts for certain consumer purchases made after the bankruptcy case was filed if obtaining the trustee's prior approval of incurring the debt was practicable but was not obtained;
- debts for restitution, or damages, awarded in a civil action against the debtor as a result of malicious or willful injury by the debtor that caused personal injury to an individual or the death of an individual; and
- debts for death or personal injury caused by operating a vehicle while intoxicated.

In addition, this discharge does not stop creditors from collecting from anyone else who is also liable on the debt, such as an insurance company or a person who cosigned or guaranteed a loan.

**This information is only a general summary of a chapter 13 discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case.**

**EXHIBIT "F"**

United States Bankruptcy Court
Northern District of Texas

In re:
    Case No. 17-44426-mxm

Kimberly Jesse Volpe
    Chapter 13
    Debtor(s)

# CERTIFICATE OF NOTICE

| District/off: 0539-4 | User: ccumby | Page 1 of 4 |
|---|---|---|
| Date Rcvd: Dec 03, 2020 | Form ID: pdf013 | Total Noticed: 64 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |
| ++ | Addresses marked '++' were redirected to the recipient's preferred mailing address pursuant to 11 U.S.C. 342(f)/Fed.R.Bank.P.2002(g)(4). |
| ## | Addresses marked '##' were identified by the USPS National Change of Address system as undeliverable. Notices will no longer be delivered by the USPS to these addresses; therefore, they have been bypassed. The debtor's attorney or pro se debtor was advised that the specified notice was undeliverable. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Dec 05, 2020:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Kimberly Jesse Volpe, ▮▮▮▮▮▮▮ |
| cr | + | CitiMortgage, Inc., c/o BDFTE, LLP, 4004 Belt Line Rd Suite 100, Addison, TX 75001-4320 |
| cr | + | Tarrant County, Linebarger Goggan Blair & Sampson, LLP, c/o Melissa L. Palo, 2777 N. Stemmons Frwy, Suite 1000 Dallas, TX 75207-2328 |
| 17876437 | + | Arlington Emergency Med Assoc., PO Box 960260, Oklahoma City, OK 73196-0260 |
| 17876439 | + | Attorney General of Texas, Collections Div- Bankruptcy Sec, PO Box 12548, Austin, TX 78711-2548 |
| 17876440 | + | Baylor All Saints, P.O. Box 460036, Garland, TX 75046-0036 |
| 19972820 | + | Baylor All Saints Med Ctr, c/o Creditors Bankruptcy Service, P.O. Box 800849, Dallas, TX 75380-0849 |
| 18524023 | + | CITIMORTGAGE, C/O Cenlar, F.S.B., 425 Phillips Blvd., Ewing, NJ 08618-1430 |
| 17876443 | + | Check N Title, 3906 Camp Wisdom, Dallas, TX 75237-2472 |
| 17945458 | | CitiMortgage, Inc., P.O. Box 6030, Sioux Falls, SD 57117-6030 |
| 17876444 | | Citimortgage Inc, Attn: Bankruptcy, PO Box 6423, Sioux Falls, SD 57117 |
| 17876449 | ++ | FORD MOTOR CREDIT COMPANY, P O BOX 62180, COLORADO SPRINGS CO 80962-2180 address filed with court:, Ford Motor Credit, National Bankruptcy Service Center, PO Box 62180, Colorado Springs, CO 80962 |
| 17876454 | + | Linebarger Goggan Blair et al, 2777 N Stemmons Frwy. Ste. 1000, Dallas, TX 75207-2328 |
| 17876455 | + | Mohela-Dept of Ed, 633 Spirit Dr, Chesterfield, MO 63005-1243 |
| 17876456 | + | Ocwen Loan Servicing, Llc, Attn: Research-Bankruptcy, 1661 Worthington Rd Ste 100, West Palm Bch, FL 33409-6493 |
| 17876457 | + | Panhandle Plains, PO Box 839, Canyon, TX 79015-0839 |
| 17979380 | + | REGIONAL FINANCE CORPORATION OF TEXAS LLC, REGIONAL MANAGEMENT CORPORATION, 979 B BATESVILLE ROAD, GREER, SC 29651-6819 |
| 17876465 | + | Rooms To Go, P O Box 703, Wooddale, IL 60191-0703 |
| 17876466 | + | Saxon Mortgage Service, Po Box 161489, Fort Worth, TX 76161-1489 |
| 17876467 | + | Six Flags Membership, 2201 Road To Six Flags, Arlington, TX 76011-5157 |
| 17952381 | + | Tarrant County, Linebarger Goggan Blair & Sampson, C/O Melissa Palo, 2777 N. Stemmons Freeway Suite 1000, Dallas, Texas 75207-2328 |
| 17876474 | + | Texas Health Presbyterian, P.O. Box 460036, Garland, TX 75046-0036 |
| 17876476 | + | Transformance, 8737 King George Dr., Dallas, TX 75235-2222 |
| 17876480 | + | US Dept of Education, Attn: Bankruptcy, PO Box 16448, Saint Paul, MN 55116-0448 |
| 17881309 | + | US Dept of EducationMOHELA, 633 Spirit Dr, Chesterfield, MO 63005-1243 |
| 17876481 | + | Visa Dept Store National Bank-Macys, Attn: Bankruptcy, PO Box 8053, Mason, OH 45040-8053 |
| 17876451 | ++ | WACHOVIA BANK NA, MAC X2303-01A, 1 HOME CAMPUS, 1ST FLOOR, DES MOINES IA 50328-0001 address filed with court:, Homeq Servicing, Po Box 13716, Sacramento, CA 95853 |

TOTAL: 27

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| cr | + | Email/PDF: gecsedi@recoverycorp.com | Dec 04 2020 01:59:33 | Synchrony Bank, c/o PRA Receivables Management, LLC, PO Box 41021, Norfolk, VA 23541-1021 |
| 17876438 | + | Email/text: g17768@att.com | Dec 03 2020 23:38:00 | AT & T, PO Box 90245, Arlington, TX 76004-3245 |
| 17876435 | + | Email/Text: bankruptcy@rentacenter.com | | |

**EXHIBIT "F"**

District/off: 0539-4 | User: ccumby | Page 2 of 4
Date Rcvd: Dec 03, 2020 | Form ID: pdf013 | Total Noticed: 64

|  |  |  | Dec 03 2020 23:41:00 | Acceptance Now, Attn: Bankruptcy, 5501 Headquarters Dr, Plano, TX 75024-5837 |
| 17876436 | + | Email/Text: bankruptcy@rentacenter.com |  |  |
|  |  |  | Dec 03 2020 23:41:00 | Acceptance Now, 5501 Headquarters Dr, Plano, TX 75024-5837 |
| 17876442 | + | Email/Text: bankruptcy_notifications@ccsusa.com |  |  |
|  |  |  | Dec 03 2020 23:41:00 | CCS, Payment Processing Center, P.O. Box 55126, Boston, MA 02205-5126 |
| 17876441 | + | Email/PDF: AIS.cocard.ebn@americaninfosource.com |  |  |
|  |  |  | Dec 04 2020 01:47:16 | Capital One, Attn: Bankruptcy, PO Box 30253, Salt Lake City, UT 84130-0253 |
| 17876445 | + | Email/Text: BNC-ALLIANCE@QUANTUM3GROUP.COM |  |  |
|  |  |  | Dec 03 2020 23:39:00 | Comenity Bank, Attn: Bankruptcy, PO Box 182125, Columbus, OH 43218-2125 |
| 17876447 | + | Email/PDF: creditonebknotifications@resurgent.com |  |  |
|  |  |  | Dec 04 2020 01:59:37 | Credit One Bank Na, PO Box 98873, Las Vegas, NV 89193-8873 |
| 17876448 | + | Email/Text: CSIBKR@CREDITSYSTEMSINTL.COM |  |  |
|  |  |  | Dec 03 2020 23:41:00 | Credit Systems International, Inc, 1277 Country Club Lane, Fort Worth, TX 76112-2304 |
| 17876450 | + | Email/Text: bnc-bluestem@quantum3group.com |  |  |
|  |  |  | Dec 03 2020 23:41:00 | Gettington.com, PO Box 166, Newark, NJ 07101-0166 |
| 17876452 |  | Email/Text: sbse.cio.bnc.mail@irs.gov |  |  |
|  |  |  | Dec 03 2020 23:39:00 | Internal Revenue Service, Centralized Insolvency Operations, PO Box 7346, Philadelphia, PA 19101-7346 |
| 18103770 |  | Email/Text: JCAP_BNC_Notices@jcap.com |  |  |
|  |  |  | Dec 03 2020 23:40:00 | JEFFERSON CAPITAL SYSTEMS LLC, PO Box 7999, St Cloud MN 56302 |
| 18029835 |  | Email/PDF: resurgentbknotifications@resurgent.com |  |  |
|  |  |  | Dec 04 2020 01:57:15 | LVNV Funding, LLC its successors and assigns as, assignee of MHC Receivables, LLC and, FNBM, LLC, Resurgent Capital Services, PO Box 10587, Greenville, SC 29603-0587 |
| 18030664 |  | Email/PDF: resurgentbknotifications@resurgent.com |  |  |
|  |  |  | Dec 04 2020 01:47:41 | LVNV Funding, LLC its successors and assigns as, assignee of Santander Consumer USA, Resurgent Capital Services, PO Box 10587, Greenville, SC 29603-0587 |
| 17984510 |  | Email/PDF: PRA_BK2_CASE_UPDATE@portfoliorecovery.com |  |  |
|  |  |  | Dec 04 2020 01:56:56 | Portfolio Recovery Associates, LLC, c/o Capital One Bank, N.a., POB 41067, Norfolk VA 23541 |
| 17877952 | + | Email/PDF: PRA_BK2_CASE_UPDATE@portfoliorecovery.com |  |  |
|  |  |  | Dec 04 2020 01:59:40 | PRA Receivables Management, LLC, PO Box 41021, Norfolk, VA 23541-1021 |
| 17876458 | + | Email/PDF: gecsedi@recoverycorp.com |  |  |
|  |  |  | Dec 04 2020 01:59:33 | Paypal Credit Inc., Attn: Bankruptcy Dept, PO Box 5138, Lutherville, MD 21094-5138 |
| 18024772 |  | Email/Text: bnc-quantum@quantum3group.com |  |  |
|  |  |  | Dec 03 2020 23:40:00 | Quantum3 Group LLC as agent for, MOMA Funding LLC, PO Box 788, Kirkland, WA 98083-0788 |
| 17876459 | + | Email/Text: BankruptcyMail@questdiagnostics.com |  |  |
|  |  |  | Dec 03 2020 23:41:00 | Quest Diagnostics, 500 Plaza Drive, Secaucus, NJ 07094-3656 |
| 17876460 | + | Email/Text: bankruptcy@regionalmanagement.com |  |  |
|  |  |  | Dec 03 2020 23:39:00 | Regional Fin, 230 W. Parker Rd., Plano, TX 75075-2352 |
| 17876461 | + | Email/Text: bankruptcy@regionalmanagement.com |  |  |
|  |  |  | Dec 03 2020 23:39:00 | Regional Finance, 1518 Pennsylvania Avenue, Fort Worth, TX 76104-2027 |
| 17876463 | + | Email/Text: bankruptcy@regionalmanagement.com |  |  |
|  |  |  | Dec 03 2020 23:39:00 | Regional Finance, PO Box 776, Mauldin, SC 29662-0776 |
| 17876462 | + | Email/Text: bankruptcy@regionalmanagement.com |  |  |
|  |  |  | Dec 03 2020 23:39:00 | Regional Finance, 3917 W Camp Wisdom Rd., Dallas, TX 75237-2468 |
| 17876464 | + | Email/Text: bankruptcy@regionalmanagement.com |  |  |
|  |  |  | Dec 03 2020 23:39:00 | Regional Finance, 3465 W. Walnut St. ste. 107, Garland, TX 75042-7169 |
| 17876468 | + | Email/PDF: gecsedi@recoverycorp.com |  |  |
|  |  |  | Dec 04 2020 01:47:03 | Synchrony Bank-Amazon, Attn: Bankruptcy, PO Box 965060, Orlando, FL 32896-5060 |
| 17876469 | + | Email/PDF: gecsedi@recoverycorp.com |  |  |
|  |  |  | Dec 04 2020 01:56:28 | Synchrony Bank-Care Credit, Attn: Bankruptcy, |

**EXHIBIT "F"**

Case 17-44426-mxm13 Doc 79 Filed 12/05/20    Entered 12/05/20 23:26:33    Page 5 of 6
Case 4:21-cv-00484-P    Document 29    Filed 07/02/21    Page 87 of 123    PageID 508
District/off: 0539-4                          User: ccumby                          Page 3 of 4
Date Rcvd: Dec 03, 2020                       Form ID: pdf013                       Total Noticed: 64

| | | | |
|---|---|---|---|
| | | | PO Box 965060, Orlando, FL 32896-5060 |
| 17876470 | + Email/PDF: gecsedi@recoverycorp.com | Dec 04 2020 01:56:25 | Synchrony Bank-TJX, Attn: Bankruptcy, PO Box 965060, Orlando, FL 32896-5060 |
| 17876471 | Email/PDF: ais.tmobile.ebn@americaninfosource.com | Dec 04 2020 01:46:54 | T-Mobile, Attn: Bankruptcy, PO Box 53410, Bellevue, WA 98015 |
| 17876446 | Email/Text: pacer@cpa.state.tx.us | Dec 03 2020 23:41:00 | Comptroller of Public Accounts, Revenue Accounting- Bankruptcy Div, PO Box 13528, Austin,TX 78711 |
| 17876472 | Email/Text: delinquenttax@tarrantcounty.com | Dec 03 2020 23:39:00 | Tarrant County Tax Assesor-Collector, Ron Wright, CTA, PO Box 961018, Fort Worth, TX 76161-0018 |
| 17876473 | Email/Text: bankruptcyclerk@tabc.texas.gov | Dec 03 2020 23:41:00 | Texas Alcoholic Beverage Commission, Licenses and Permit Division, PO Box 13127, Austin,TX 78711-3127 |
| 17882293 | Email/PDF: EBN_AIS@AMERICANINFOSOURCE.COM | Dec 04 2020 01:59:49 | Texas Health Resources, by American InfoSource LP as agent, PO Box 248838, Oklahoma City, OK 73124-8838 |
| 17876475 | + Email/Text: ridpacer@twc.state.tx.us | Dec 03 2020 23:41:00 | Texas Workforce Commission, TEC Building-Bankruptcy, 101 E 15th St, Austin, TX 78778-0001 |
| 17876477 | Email/Text: brooke.lewis@usdoj.gov | Dec 03 2020 23:41:00 | United States Attorney, 3rd Floor, 1100 Commerce St, Dallas, TX 75242 |
| 17876478 | + Email/Text: ustpregion06.da.ecf@usdoj.gov | Dec 03 2020 23:39:00 | United States Trustee, 1100 Commerce St, Rm 9C60, Dallas, TX 75242-9998 |
| 17876479 | + Email/Text: ustpregion06.da.ecf@usdoj.gov | Dec 03 2020 23:39:00 | United States Trustee- Northern District, 1100 Commerce St, Rm 976, Dallas, TX 75242-0996 |
| 17876482 | + Email/Text: bnc-bluestem@quantum3group.com | Dec 03 2020 23:41:00 | Webbank-Gettington, 215 S State St, Ste 1000, Salt Lake City, UT 84111-2336 |

TOTAL: 37

# BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| cr | *P++ | JEFFERSON CAPITAL SYSTEMS LLC, PO BOX 7999, SAINT CLOUD MN 56302-7999, address filed with court:, Jefferson Capital Systems LLC, PO Box 7999, St Cloud, MN 56302-9617 |
| 17942433 | *P++ | FORD MOTOR CREDIT COMPANY, P O BOX 6180, COLORADO SPRINGS CO 80962-2180, address filed with court:, Ford Motor Credit Company LLC, c/o National Bankruptcy Service Center, P.O. Box 62180, Colorado Springs, CO 80962 |
| 17876453 | ##+ | Leinart Law Firm, 11520 N. Central Expressway, Suite 212, Dallas, Texas 75243-6608 |

TOTAL: 0 Undeliverable, 2 Duplicate, 1 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Dec 05, 2020                  Signature:      /s/Joseph Speetjens

**EXHIBIT "F"**

District/off: 0539-4 | User: ccumby | Page 4 of 4
Date Rcvd: Dec 03, 2020 | Form ID: pdf013 | Total Noticed: 64

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on December 3, 2020 at the address(es) listed below:**

| Name | Email Address |
|------|---------------|
| Abbey U. Dreher | on behalf of Creditor CitiMortgage  Inc. ndecf@BDFGROUP.com |
| John R. Callison | on behalf of Creditor CitiMortgage  Inc. ndecf@bdfgroup.com |
| Marcus B. Leinart | on behalf of Debtor Kimberly Jesse Volpe ecf@leinartlaw.com  ecfbackup@leinartlaw.com;llfecfbackup@yahoo.com |
| Melissa Linell Palo | on behalf of Creditor Tarrant County lisa.cockrell@lgbs.com  janell.buster@lgbs.com;michael.alvis@lgbs.com |
| Pam Bassel | fwch13cmecf@fwch13.com |
| Pam Bassel | on behalf of Trustee Pam Bassel fwch13cmecf@fwch13.com |
| Paul K. Kim | on behalf of Creditor CitiMortgage  Inc. ndecf@BDFGROUP.com |
| Stephen Wilcox | on behalf of Creditor Ford Motor Credit Company LLC kraudry@wilcoxlaw.net swilcoxndtx@basselwilcox.com;krw77@sbcglobal.net;kraudry@ecf.inforuptcy.com |
| United States Trustee | ustpregion06.da.ecf@usdoj.gov |

TOTAL: 9

**EXHIBIT "F"**



# CREDIT REPORT

---

**KIMBERLY VOLPE**

**Report Confirmation**

█████████

| Jan 11, 2021 | CITIMORTGAGE | Account Review Inquiry |



| Oct 09, 2020 | CITIMORTGAGE | Account Review Inquiry |

| Jul 17, 2020 | CITIMORTGAGE | Account Review Inquiry |

| Apr 13, 2020 | CITIMORTGAGE | Account Review Inquiry |

**EXHIBIT "G"**



# CREDIT REPORT

---

**KIMBERLY LACKEY**

**Report Confirmation**



| Apr 12, 2021 | CITIMORTGAGE | Account Review Inquiry |

| Jan 11, 2021 | CITIMORTGAGE | Account Review Inquiry |

**EXHIBIT "H"**



| | | |
|---|---|---|
| Oct 09, 2020 | CITIMORTGAGE | Account Review Inquiry |

| | | |
|---|---|---|
| Jul 17, 2020 | CITIMORTGAGE | Account Review Inquiry |

**EXHIBIT "H"**



# CREDIT REPORT

---

**KIMBERLY VOLPE**

**Report Confirmation**

# 3. Mortgage Accounts

Mortgage accounts are real estate loans that require payment on a monthly basis until the loan is paid off.

## 3.1 CENLAR FEDERAL SAVINGS BANK

### Summary

Your debt-to-credit ratio represents the amount of credit you're using and generally makes up a percentage of your credit score. It's calculated by dividing an account's reported balance by its credit limit.

| | | | |
|---|---|---|---|
| Account Number | xxxxxxxxx 5444 | Reported Balance | $138,104 |
| Account Status | PAYS_AS_AGREED | Debt-to-Credit Ratio | 81% |
| Available Credit | | | |

### Account History

The tables below show up to 2 years of the monthly balance, available credit, scheduled payment, date of last payment, high credit, credit limit, amount past due, activity designator, and comments.

#### Balance

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2019 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | $141,016 |
| 2021 | $139,900 | | | | | | | | | | | |

#### Available Credit

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2019 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | |
| 2021 | | | | | | | | | | | | |

#### Scheduled Payment

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2019 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | $1,734 |
| 2021 | $1,734 | | | | | | | | | | | |

EXHIBIT "I"

## Actual Payment

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2019 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | $1,734 |
| 2021 | $1,734 | | | | | | | | | | | |

## High Credit

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2019 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | $169,811 |
| 2021 | $169,811 | | | | | | | | | | | |

## Credit Limit

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2019 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | |
| 2021 | | | | | | | | | | | | |

## Amount Past Due

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2019 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | |
| 2021 | | | | | | | | | | | | |

## Activity Designator

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2019 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | |
| 2021 | | | | | | | | | | | | |

## Comments 1

| Date | Comment |
|------|---------|
| 12/2020 | Fixed rate |

**EXHIBIT "I"**

| Date | Comment |
|------|---------|
| 01/2021 | Fixed rate |

## Payment History

View up to 7 years of monthly payment history on this account. The numbers indicated in each month represent the number of days a payment was past due; the letters indicate other account events, such as bankruptcy or collections.

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2021 | ✔ | ✔ | | | | | | | | | | |
| 2020 | | | | | | | | | | | | |
| 2019 | | | | | | | | | | | | |
| 2018 | | | | | | | | | | | | |
| 2017 | | | | | | | | | | | | |
| 2016 | | | | | | | | | | | | |
| 2015 | | | | | | | | | | | | |
| 2014 | | | | | | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ✔ Paid on Time | **30** 30 Days Past Due | **60** 60 Days Past Due | **90** 90 Days Past Due | **120** 120 Days Past Due |
| **150** 150 Days Past Due | **180** 180 Days Past Due | **V** Voluntary Surrender | **F** Foreclosure | **C** Collection Account |
| **CO** Charge-Off | **B** Included in Bankruptcy | **R** Repossession | **TN** Too New to Rate | No Data Available |

## Account Details

View detailed information about this account. Contact the creditor or lender if you have any questions about it.

| | | | |
|---|---|---|---|
| High Credit | $169,811 | Owner | INDIVIDUAL |
| Credit Limit | | Account Type | MORTGAGE |
| Terms Frequency | MONTHLY | Term Duration | 36 |
| Balance | $138,104 | Date Opened | Oct 06, 2011 |
| Amount Past Due | | Date Reported | Mar 05, 2021 |
| Actual Payment Amount | $2,414 | Date of Last Payment | Mar 01, 2021 |
| Date of Last Activity | | Scheduled Payment Amount | $1,734 |
| Months Reviewed | 25 | Delinquency First Reported | |
| Activity Designator | | Creditor Classification | UNKNOWN |

**EQUIFAX**                KIMBERLY VOLPE | Mar 22, 2021                Page 31 of 84

Summary › Revolving › **Mortgage** › Installment › Other › Statements › Personal Info › Inquiries › Public Records › Collections

**EXHIBIT "I"**

| | | | |
|---|---|---|---|
| **Deferred Payment Start Date** | | **Charge Off Amount** | |
| **Balloon Payment Date** | | **Balloon Payment Amount** | |
| **Loan Type** | Federal Housing Administration Real Estate Mortgage | **Date Closed** | |
| **Date of First Delinquency** | | | |

## Comments

Fixed rate

## Contact

CENLAR FEDERAL SAVINGS BANK
425 PHILLIPS BLVD.
EWING, NJ  08618
1-609-883-3900

EQUIFAX     KIMBERLY VOLPE | Mar 22, 2021     Page 32 of 84

Summary | Revolving | Mortgage | Installment | Other | Statements | Personal Info | Inquiries | Public Records | Collections

**EXHIBIT "I"**

Prepared For

# KIMBERLY VOLPE

**Personal & Confidential**

**Date Generated** Mar 22, 2021

**Report Number** ███████████

## At a Glance

| 20 Accounts | 1 Public Records | 5 Hard Inquiries |
|---|---|---|

## Personal Information

| 9 Names | 17 Addresses | 4 Employers | 30 Other Records |
|---|---|---|---|

This information is reported to us by you, your creditors and/or other sources. Each source may report your information differently, which may result in variations of your name, address, Social Security number, etc. This is used for identification purposes only and does not factor into your Credit Score.

### Names

| KIMBERLY J VOLPE ███████ | KIM LACKEY ███████ | KIMBERLY J LACKEY ███████ | KIMBERLY LACKEY ███████ |
|---|---|---|---|
| KIM VOLPE ███████ | KIMBERLY J LACKY ███████ | KIMBERLY VOLPE ███████ | KIMBERLY JESSE VOLPE ███████ |
| KIMBERLY LACKY ███████ | | | |

| Date | Balance | Scheduled Payment | Paid |
| --- | --- | --- | --- |





## CENLAR FEDERAL SAVINGS & LOAN

### Account Info

| | |
| --- | --- |
| Account Name | **CENLAR FEDERAL SAVINGS & LOAN** |
| Account Number | **300476XXXXXXX** |
| Account Type | **FHA Mortgage** |
| Responsibility | **Individual** |
| Date Opened | **10/06/2011** |
| Status | **Open/Never late.** |
| Status Updated | **Mar 2021** |
| Balance | **$138,104** |
| Balance Updated | **03/05/2021** |

| Recent Payment | $2,414 |
|---|---|
| Monthly Payment | $1,734 |
| Original Balance | $169,811 |
| Highest Balance | $0 |
| Terms | 30 Years |

### Payment History

|  | J | F | M | A | M | J | J | A | S | O | N | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021 | ● | ● | ● | — | — | — | — | — | — | — | — | — |

● Current on payments

### Balance History

| Date | Balance | Scheduled Payment | Paid |
|---|---|---|---|
| Feb 2021 | $139,900 | $1,734 | $1,734 on 1/11/2021 |
| Jan 2021 | $141,016 | $1,734 | $1,734 on 12/14/2020 |

**Additional info**

The original amount of this account was $169,811

### Contact Info

| Address | PO BOX 77404, EWING, NJ 08628 |
|---|---|
| Phone Number | (855) 752-8456 |



**EXHIBIT "J"**

## Hard Inquiries

Hard inquiries are requests for your consumer information based on an action or process initiated by you generally related to a credit or other monetary obligation, such as when you apply for credit, or default on a loan causing it to be sent to a collection agency. Hard inquiries are companies that receive your consumer report and may stay on your report at le

| FIRST INVST SVC/FIRST IN | JPMCB CARD | CITBANK NA., BEST BUY |
|---|---|---|
| Inquired on 02/25/2021 | Inquired on 02/17/2021 | Inquired on 12/20/2020 |
| 5757 WOODWAY DR STE 400 HOUSTON TX, 77057 | PO BOX 15369 WILMINGTON DE, 19850 | 5800 S CORPORATE PL SIOUX FALLS SD, 57108 |
| Unspecified. This inquiry is scheduled to | Credit card with 0 Months repayment terms. This inquiry is scheduled to continue on record until Mar 2023. | Unspecified. This inquiry is scheduled to continue on record until Jan 2023. |





## Soft Inquiries

Soft inquiries are usually initiated by others, like companies making promotional offers of credit or your lender conducting periodic reviews of your existing credit accounts. Soft inquiries also occur when you check your own credit report or when you use credit monitoring services from companies like Experian. These inquiries do not impact your credit score. Soft inquiries are not disputable but are available here for reference.



# Personal Credit Report for Kimberly Volpe

**Report Date:** 03/22/2021
**Source:** TransUnion

**File Number:** ▇▇▇▇▇▇

## Personal Information

You have been on our files since 09/01/1987

**SSN:** XXX-XX▇▇
Your SSN has been masked for your protection.

**Date of Birth:** ▇▇▇▇▇

**Names Reported:** KIM LACKEY, KIM VOLPE, KIMBERLY JESSE VOLPE and KIMBERLY VOLPE

### Addresses Reported:

| Address | Date Reported |
|---|---|
| ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | |



### Telephone Numbers Reported:

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

### Employment Data Reported:

## Public Records

This section includes public record items from local, state and federal courts and other public record sources that TransUnion may have obtained itself or through a third party vendor. In order to learn the identity of the third-party vendor (if any) that collected the public record item(s) in this section, please visit https://www.transunion.com/legal/public-records Discharged Chapter 13 bankruptcy remains on your file for up to 7 years.

### USBK COURT NORTHERN TEXAS DOCKET# 1744426

501 W 10TH
RM 147
FORT WORTH, TX 76102
(817) 333-6000

| | | | |
|---|---|---|---|
| **Date Filed:** 11/02/2017 | **Type:** | CHAPTER 13 BANKRUPTCY DISCHARGED | **Court Type:** US Bankruptcy Court |
| **Date Paid:** 12/03/2020 | | | **Plaintiff Attorney:** MARCUS B LEINART |
| **Date Updated:** 12/04/2020 | **Responsibility:** | Individual Debt | |

**Estimated month and year that this item will be removed:** 10/2024

## Account Information

Typically, creditors report any changes made to your account information monthly. This means that some accounts listed below may not reflect the most recent activity until the creditor's next reporting. This information may include things such as balances, payments, dates, remarks, ratings, etc. The key(s) below are provided to help you understand some of the account information that could be reported.

**Rating Key**
Some creditors report the timeliness of your payments each month in relation to your agreement with them. The ratings in the key below describe the payments that may be reported by your creditors. Please note: Some but not all of these ratings may be present in your credit report.

| N/R | X | OK | 30 | 60 | 90 | 120 | COL | VS | RPO | C/O | FC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Not Reported | Unknown | Current | 30 days late | 60 days late | 90 days late | 120 + days late | Collection | Voluntary Surrender | Repo-ssession | Charge Off | Foreclosure |

## Adverse Accounts

Adverse information typically remains on your credit file for up to 7 years from the date of the delinquency. To help you understand what is generally considered adverse, we have added >brackets< to those items in this report. For your protection, your account numbers have been partially masked, and in some cases scrambled. Please note: Accounts are reported as "Current; Paid or paying as agreed" if paid within 30 days of the due date. Accounts reported as Current may still incur late fees or interest charges if not paid on or before the due date.



**EXHIBIT "K"**



## Satisfactory Accounts

The following accounts are reported with no adverse information. For your protection, your account numbers have been partially masked, and in some cases scrambled. Please note: Accounts are reported as "Current; Paid or paying as agreed" if paid within 30 days of the due date. Accounts reported as Current may still incur late fees or interest charges if not paid on or before the due date.

### CENLAR MTG #300476856****

PO BOX 77404
EWING, NJ 08628
(855) 839-6253

| | | | |
|---|---|---|---|
| Date Opened: | 10/06/2011 | Date Updated: | 03/05/2021 |
| Responsibility: | Individual Account | Payment Received: | $2,414 |
| Account Type: | Mortgage Account | Last Payment Made: | 03/01/2021 |
| Loan Type: | FHA REAL ESTATE MORTGAGE | | |

Pay Status: Current Account
Terms: $1,734 per month, paid Monthly for 360 months

High Balance: High balance of $169,811 from 01/2021 to 03/2021

| | 03/2021 | 02/2021 | 01/2021 | 12/2020 | 11/2020 | 10/2020 | 09/2020 | 08/2020 | 07/2020 | 06/2020 |
|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $138,104 | $139,900 | $141,016 | | | | | | | |
| Scheduled Payment | $1,734 | $1,734 | $1,734 | | | | | | | |
| Amount Paid | $2,414 | $1,734 | $1,734 | | | | | | | |
| Past Due | $0 | $0 | $0 | | | | | | | |
| Rating | OK | OK | OK | X | X | X | X | X | X | X |

| | 05/2020 | 04/2020 | 03/2020 | 02/2020 | 01/2020 | 12/2019 | 11/2019 | 10/2019 | 09/2019 | 08/2019 |
|---|---|---|---|---|---|---|---|---|---|---|
| Rating | X | X | X | X | X | X | X | X | X | X |

| | 07/2019 | 06/2019 | 05/2019 | 04/2019 | 03/2019 | 02/2019 |
|---|---|---|---|---|---|---|
| Rating | X | X | X | X | X | X |

**EXHIBIT "K"**



## Regular Inquiries

Regular Inquiries are posted when someone accesses your credit information from TransUnion. The presence of an inquiry means that the company listed received your credit information on the dates specified. These inquiries will remain on your credit file for up to 2 years.

**SYNCHRONY FINANCIAL**

PO BOX 8726
DAYTON, OH 45401
(800) 924-2927

**Requested On:**      12/22/2020
**InquiryType:**      Individual

## Promotional Inquiries

**EXHIBIT "K"**



# CREDIT REPORT

---

**KIMBERLY LACKEY**

**Report Confirmation**

# 3. Mortgage Accounts

Mortgage accounts are real estate loans that require payment on a monthly basis until the loan is paid off.

## 3.1 CENLAR FEDERAL SAVINGS BANK

### Summary

Your debt-to-credit ratio represents the amount of credit you're using and generally makes up a percentage of your credit score. It's calculated by dividing an account's reported balance by its credit limit.

| | | | |
|---|---|---|---|
| Account Number | xxxxxxxxx 5444 | Reported Balance | $136,599 |
| Account Status | PAYS_AS_AGREED | Debt-to-Credit Ratio | 80% |
| Available Credit | | | |

### Account History

The tables below show up to 2 years of the monthly balance, available credit, scheduled payment, date of last payment, high credit, credit limit, amount past due, activity designator, and comments.

#### Balance

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2019 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | $141,016 |
| 2021 | $139,900 | | $136,986 | $136,599 | | | | | | | | |

#### Available Credit

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2019 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | |
| 2021 | | | | | | | | | | | | |

#### Scheduled Payment

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2019 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | $1,734 |
| 2021 | $1,734 | | $1,926 | $1,926 | | | | | | | | |

**EQUIFAX**    KIMBERLY LACKEY | Jun 24, 2021    Page 30 of 86

Summary › Revolving › **Mortgage** › Installment › Other › Statements › Personal Info › Inquiries › Public Records › Collections

**EXHIBIT "L"**

## Actual Payment

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2019 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | $1,734 |
| 2021 | $1,734 | | $1,734 | $1,734 | | | | | | | | |

## High Credit

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2019 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | $169,811 |
| 2021 | $169,811 | | $169,811 | $169,811 | | | | | | | | |

## Credit Limit

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2019 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | |
| 2021 | | | | | | | | | | | | |

## Amount Past Due

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2019 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | |
| 2021 | | | | | | | | | | | | |

## Activity Designator

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2019 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | |
| 2021 | | | | | | | | | | | | |

## Comments 1

| Date | Comment |
|------|---------|
| 12/2020 | Fixed rate |

**EQUIFAX**                KIMBERLY LACKEY | Jun 24, 2021                Page 31 of 86

Summary 〉 Revolving 〉 **Mortgage** 〉 Installment 〉 Other 〉 Statements 〉 Personal Info 〉 Inquiries 〉 Public Records 〉 Collections

EXHIBIT "L"

| Date | Comment |
|------|---------|
| 01/2021 | Fixed rate |
| 03/2021 | Fixed rate |
| 04/2021 | Fixed rate |

## Payment History

View up to 7 years of monthly payment history on this account. The numbers indicated in each month represent the number of days a payment was past due; the letters indicate other account events, such as bankruptcy or collections.

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2021 | ✔ | ✔ | ✔ | ✔ | | | | | | | | |
| 2020 | | | | | | | | | | | | |
| 2019 | | | | | | | | | | | | |
| 2018 | | | | | | | | | | | | |
| 2017 | | | | | | | | | | | | |
| 2016 | | | | | | | | | | | | |
| 2015 | | | | | | | | | | | | |
| 2014 | | | | | | | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| ✔ Paid on Time | **30** 30 Days Past Due | **60** 60 Days Past Due | **90** 90 Days Past Due | **120** 120 Days Past Due |
| **150** 150 Days Past Due | **180** 180 Days Past Due | **V** Voluntary Surrender | **F** Foreclosure | **C** Collection Account |
| **CO** Charge-Off | **B** Included in Bankruptcy | **R** Repossession | **TN** Too New to Rate | No Data Available |

## Account Details

View detailed information about this account. Contact the creditor or lender if you have any questions about it.

| | | | |
|------|------|------|------|
| High Credit | $169,811 | Owner | INDIVIDUAL |
| Credit Limit | | Account Type | MORTGAGE |
| Terms Frequency | MONTHLY | Term Duration | 36 |
| Balance | $136,599 | Date Opened | Oct 06, 2011 |
| Amount Past Due | | Date Reported | May 05, 2021 |
| Actual Payment Amount | $1,734 | Date of Last Payment | Apr 01, 2021 |
| Date of Last Activity | | Scheduled Payment Amount | $1,926 |

**EXHIBIT "L"**

| | | | |
|---|---|---|---|
| **Months Reviewed** | 27 | **Delinquency First Reported** | |
| **Activity Designator** | | **Creditor Classification** | UNKNOWN |
| **Deferred Payment Start Date** | | **Charge Off Amount** | |
| **Balloon Payment Date** | | **Balloon Payment Amount** | |
| **Loan Type** | Federal Housing Administration Real Estate Mortgage | **Date Closed** | |
| **Date of First Delinquency** | | | |

## Comments

Fixed rate

## Contact

CENLAR FEDERAL SAVINGS BANK
425 PHILLIPS BLVD.
EWING, NJ  08618
1-609-883-3900

EXHIBIT "L"

# 8. Inquiries

A request for your credit history is called an inquiry. There are two types of inquiries - those that may impact your credit rating/score and those that do not.

## Hard Inquiries

Inquiries that may impact your credit rating/score

These are inquiries made by companies with whom you have applied for a loan or credit. They may remain on your file up to 2 years.

| Date | Company | Request Originator |
|------|---------|--------------------|
| May 29, 2021 | EC CARS<br><br>2845 SW WILSHIRE BLVD<br>BURLESON, TX  76028<br><br>1-817-879-2115 | |
| May 25, 2021 | FREEMAN FINANCIAL INVESTMENT<br><br>204 NE LOOP 820<br>COMPANY LP/FREEMAN TOYOTA<br>HURST, TX  76053<br><br>1-817-287-5200 | |
| May 07, 2021 | CAPITAL ONE BANK USA NA<br><br>15000 CAPITAL ONE DRIVE | |

Inquiries that do not impact your credit rating/score

These are inquiries, for example, from companies making promotional offers of credit, periodic account reviews by an existing creditor or your own requests to check your credit file. They may remain on your file for up to 2 years.

| Date | Company | Request Originator | Description |
|------|---------|--------------------|-------------|
| | | | |

EXHIBIT "L"

Disclosure Report

Personal Credit Report for:

**KIMBERLY VOLPE**

File Number:

███████████

Date Created:

**06/14/2021**

A quick heads up:

**Your credit score is not included with your TransUnion credit report.**

Learn about your <u>options to get your credit score</u>.

300                                                                 850

# Your TransUnion Credit Report

**Found something inaccurate on your credit report?**
Visit <u>transunion.com/dispute</u> to start a dispute online.

## 👤 Personal Information

Your SSN has been masked for your protection.

**Credit Report Date**

06/14/2021

**Social Security Number**

XXX-XX ██████

**Date of Birth**

████████

**Name**

KIM VOLPE

## Also Known As

**AKA**

KIMBERLY JESSE VOLPE

**AKA**

KIMBERLY VOLPE

💬 Chat with Support

**EXHIBIT "M"**



## Satisfactory Accounts

The following accounts are reported with no adverse information. For your protection, your account numbers have been partially masked, and in some cases scrambled. Please note: Accounts are reported as "Current; Paid or paying as agreed" if paid within 30 days of the due date. Accounts reported as Current may still incur late fees or interest charges if not paid on or before the due date.

**CENLAR MTG**
300476856****

Address
PO BOX 77404 EWING, NJ 08628

Phone
(855) 839-6253

Monthly Payment
$1,926

Date Opened
10/06/2011



Chat with Support

EXHIBIT "M"

Disclosure Report

| Responsibility | | Account Type |
|---|---|---|
| Individual Account | | Mortgage Account |

| Loan Type | Date Updated |
|---|---|
| FHA REAL ESTATE MORTGAGE | 05/05/2021 |

| Payment Received | Last Payment Made |
|---|---|
| $1,734 | 04/12/2021 |

| Pay Status | Terms | High Balance (Hist.) |
|---|---|---|
| Current Account | $1,926 per month, paid Monthly for 360 months | High balance of $169,811 from 01/2021 to 05/2021 |

## Payment History

|  | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2021** | | | | | | | | | | | | |
| Balance: | $141,016 | $139,900 | $138,104 | $136,986 | $136,599 | | | | | | | |
| Past Due: | $0 | $0 | $0 | $0 | $0 | | | | | | | |
| Amount Paid: | $1,734 | $1,734 | $2,414 | $1,734 | $1,734 | | | | | | | |
| Scheduled Payment: | $1,734 | $1,734 | $1,734 | $1,926 | $1,926 | | | | | | | |
| Rating: | OK | OK | OK | OK | OK | | | | | | | |
| **2020** | | | | | | | | | | | | |
| Balance: | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - |
| Past Due: | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - |
| Amount Paid: | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - |
| Scheduled Payment: | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - |
| Rating: | X | X | X | X | X | X | X | X | X | X | X | X |
| **2019** | | | | | | | | | | | | |



Chat with Support

EXHIBIT "M"

|  | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Balance: | | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - |
| Past Due: | | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - |
| Amount Paid: | | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - |
| Scheduled Payment: | | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - | - - - |
| Rating: | | X | X | X | X | X | X | X | X | X | X | X |



EXHIBIT "M"





## Regular Inquiries

Regular Inquiries are posted when someone accesses your credit information from TransUnion. The presence of an inquiry means that the company listed received your credit information on the dates specified. These inquiries will remain on your credit file for up to 2 years.

| Name |
| --- |
| FREEMAN TOYOTA via NCCFREEMAN TOYOTA |

**EXHIBIT "M"**



**Name**

| Location | Requested On | Phone |
|---|---|---|
| 204 NE LOOP 820 | 05/25/2021 | (817) 287-5200 |
| HURST, TX 76053 | | |

| Inquiry Type | Permissible Purpose |
|---|---|
| Individual | CREDIT TRANSACTION |

**CAPITAL ONE**

| Location | Requested On | Phone |
|---|---|---|
| 15000 CAPITAL ONE | 05/07/2021 | (800) 955-7070 |
| RICHMOND, VA 23238 | | |

| Inquiry Type |
|---|
| Individual |

**SYNCHRONY FINANCIAL**

| Location | Requested On | Phone |
|---|---|---|
| PO BOX 8726 | 12/22/2020 | (800) 924-2927 |
| DAYTON, OH 45401 | | |

| Inquiry Type |
|---|
| Individual |

## Promotional Inquiries

The companies listed below received your name, address and other limited information about you so they could make a firm offer of credit or insurance. They did not receive your full credit report. These inquiries are not seen by anyone but you and do not affect your score.



Chat with Support

**EXHIBIT "M"**



**Comenity Bank**
PO Box 182273
Columbus, OH 43218-2273

Ilıılıılılılmmullılllllılılılllıllılılılıılı

KIM VOLPE

04/23/2021

Account Ending In: 3140

**We've changed your Venus credit card credit limit.**

Dear KIM VOLPE,

We're Comenity Bank and we handle everything related to your Venus credit card account.

After a recent review, we're now writing to let you know your credit limit is being reduced to $160.00. This is happening due to a significant decrease in your credit score from your credit bureau. Issues that may influence credit scores include:

- Lack of bankcard account information
- Balances on accts too high compared to credit limits and loan amounts
- Too few accounts paid as agreed
- Delinquent or derogatory status on accounts is too recent

**Contact your credit bureau to learn more.**

Please contact the following credit bureau if you have questions about your credit score and report:

Equifax Credit Information Services, Inc.
P.O. Box 740241
Atlanta, GA 30374
1-800-203-7843
http://www.equifax.com

For any other information about your Venus credit card account, please call us at 1-855-839-2900 (TDD/TTY:1-800-695-1788). We greatly appreciate your business.

Sincerely,

Customer Care Team

Below you will find some additional information regarding your credit score. Your score can change over time as your credit information changes.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**Send Correspondence To**
Comenity Bank
PO Box 182273 Columbus, OH 43218-2273
**All Bankruptcy Notices/Related Correspondence To**
PO Box 182125 Columbus, OH 43218-2125

423 001 000 ACBK        A 00000001 3140        2021-04-23    Page 1 of 2

**EXHIBIT "N"**

**Your credit score as of Apr 06, 2021:** ███
In the scoring system we used, scores can range from 300 to the best possible score, 850. Please be aware, there are a number of different credit scoring systems available, and each uses a different range of numbers.

Here are the most significant factors impacting your credit score:

- Lack of bankcard account information
- Balances on accts too high compared to credit limits and loan amounts
- Too few accounts paid as agreed
- Delinquent or derogatory status on accounts is too recent

If you feel the credit history information shown above is inaccurate, we encourage you to contact the credit bureau listed in this letter. They will be able to provide you answers about your credit history and how to correct any inaccuracies.

**How was your credit score determined.**
Our credit-evaluating system assigns a numerical value, or score, to a number of pieces of credit bureau information. The score is based on an analysis of the credit performance of a large number of consumers.

**Your rights under the Fair Credit Reporting Act**
We based our credit decision, in whole or in part, on information obtained in a report from the consumer-reporting agency listed below. You have a right to know under the Fair Credit Reporting Act the information contained in your credit file at the consumer-reporting agency. Please be aware that the reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You also have a right to a free copy of your report from the reporting agency if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

Equifax Credit Information Services, Inc.
P.O. Box 740241
Atlanta, GA 30374
1-800-203-7843
http://www.equifax.com

**Your rights under the Federal Equal Credit Opportunity Act**
The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW., Washington DC 20006.

**Notice for Ohio residents**
The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**EXHIBIT "N"**

Synchrony Bank
PO Box 965033
Orlando, FL 32896-5033

1069

06/11/2021

KIMBERLY VOLPE

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Regarding your Discount Tire/Synchrony Car Care account ending in 0038**

Dear Kimberly Volpe,

Based on a recent review of your account, Synchrony Bank has lowered your credit line to $250. Your
account remains open and available for use, subject to the new credit line.

Our decision was based in part on a credit scoring system that was used to predict your creditworthiness.
The reason(s) listed below indicate the credit characteristics where you did not score well.

- Lack Of Bankcard Account Information
- Balances On Accounts Too High Compared To Credit Limits And Loan Amounts
- Too Few Accounts Paid As Agreed
- Delinquent Or Derogatory Status On Auto Accounts Is Too Recent

Some information used to make this decision was obtained from the consumer reporting agency listed below.
This consumer reporting agency did not make this credit decision and is unable to provide you with the
specific reason(s) for our action. If you believe there may be information on your credit bureau that is not
correct, we suggest you contact the consumer reporting agency below to verify the information.

**Information about your External Credit Score used in this evaluation for credit**
In addition, we also obtained an external credit score from the consumer reporting agency listed below and
used it in part in making our credit decision. Your credit score is a number that reflects the information in your
credit report. Your credit score can change, depending on how the information in your credit report changes.
The credit score below was developed using standard industry methods and was used in evaluating the
action taken on your account. The credit score may differ from the score you may obtain from a consumer
reporting agency.

**Please see reverse side for important information**

**Account is owned by Synchrony Bank**

**EXHIBIT "O"**

<u>ALL PERSONS TO WHOM THIS LETTER IS ADDRESSED</u>

Please direct any inquiries concerning this notice to the creditor whose name and address is located in the upper left hand corner of the reverse side.

Requests for a copy of your credit report should be sent to the credit reporting agency listed on the reverse side. If no agency is listed, a credit report was not utilized in making this decision.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

Creditor: Synchrony Bank. The federal agency that administers compliance with this law concerning this creditor is the *Consumer Financial Protection Bureau, 1700 G Street NW., Washington, DC 20552.*

Under the federal Fair Credit Reporting Act, if a consumer reporting agency or agencies is identified in this letter, you have the right (i) to obtain, within 60 days from your receipt of this letter, a free copy of a consumer report on you from the identified agency or agencies and (ii) to dispute the accuracy or completeness of any information on you in a consumer report furnished by the consumer reporting agency or agencies.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

MA5302IL
R02042020

**EXHIBIT "O"**

Your credit score: ■■
Date: April 29, 2021

Scores range from a low of 300 to a high of 850.

Key factors that adversely affected your credit score:

- Lack Of Bankcard Account Information
- Balances On Accounts Too High Compared To Credit Limits And Loan Amounts
- Too Few Accounts Paid As Agreed
- Delinquent Or Derogatory Status On Auto Accounts Is Too Recent

While the date of the credit score may not be recent, your score has likely not changed significantly since this date. We receive updated scores on a periodic basis, and when significant changes occur. If you believe there may be information on your credit bureau that is not correct, we suggest you contact the consumer reporting agency below to verify the information.

TRANSUNION CONSUMER RELATIONS
WWW.TRANSUNION.COM/MYOPTIONS
2 BALDWIN PLACE/P.O. BOX 1000
CHESTER, PA 19022
800-888-4213

If you have any questions, please call the phone number listed below.

Sincerely,

Synchrony Bank
1-866-657-0376

**EXHIBIT "O"**

**EXHIBIT "O"**